# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARTHUR HOYTE, M.D. on behalf of
himself and all those similarly situated,
and in the interests of the general public,

        Plaintiff,

v.

YUM! Brands, Inc. d/b/a KFC,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

      Civil Action 06-1127 (JR)

## PLAINTIFF'S MEMORANDUM OF LAW WITH POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: September 12, 2006

Respectfully Submitted,

HEIDEMAN NUDELMAN
 & KALIK, P.C.
1146 19th Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: 202-463-1818
Facsimile: 202-463-2999

By: /s/ Richard D. Heideman
   Richard D. Heideman (No. 377462)
   Noel J. Nudelman (No. 449969)
   Tracy Reichman Kalik (No. 462055)

CENTER FOR SCIENCE IN THE
PUBLIC INTEREST
Stephen Gardner, Director of Litigation
(D.C. Bar application pending)
The Meadows Building
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: 214-827-2774
Facsimile: 214-827-2787

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I.     DR. HOYTE'S IMPLIED WARRANTY AND DCCPPA
CLAIMS ARE WELL-FOUNDED, AND KFC BREACHED
ITS DUTY TO WARN ITS CONSUMERS OF THE
PRESENCE OF TRANS FATS IN ITS FOODS. . . . . . . . . . . . . . . . . . . . . 5

II.    DR. HOYTE PROPERLY PLED HIS CLAIM FOR
NEGLIGENT MISREPRESENTATION. . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    Claims for Negligent Misrepresentation Must Only
Satisfy the Liberal Notice-Pleading Standards of
Rule 8 and Do Not Need To Satisfy the Stricter
Requirements Of Rule 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    Dr. Hoyte's Pleading Satisfies Even The Heightened
Rule 9(b) Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    C.    Whether Dr. Hoyte Reasonably Relied On KFC's
Misrepresentations Is A Question Of Fact That Is
Inappropriate For Resolution On A Rule 12(b)(6)
Motion To Dismiss, And Dr. Hoyte Has Sufficiently
Stated A Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

    D.    KFC's Statements Did Not Amount To Puffery,
However This Determination Should Not Be Made On
A Motion To Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.    DR. HOYTE ADEQUATELY PLED HIS CLAIM FOR
BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

    A.    Dr. Hoyte Did Not Expect, Nor Would It Be Reasonable
For Him To Expect, KFC's Foods To Contain Trans Fats. . . . . . 27

    B.    A Physical Injury Is Not Required To Prevail On A Breach
Of Warranty Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

IV.     KFC'S SCATTERGUN ATTACKS ON PLAINTIFF'S
DCCPPA CLAIM ALSO FAIL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

       A.     Dr. Hoyte has standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

       B.     KFC's practices result in actual consumer deception. . . . . . . . . . 36

       C.     Dr. Hoyte's DCCPPA claims are not pre-empted. . . . . . . . . . . .37

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

APPENDIX: EXHIBIT 1, KFC NUTRITION CALCULATOR WEB PAGES

# TABLE OF AUTHORITIES

**Federal Cases**

*Alicke v. MCI Communications Corp.*, 111 F.3d 909 (D.C. Cir. 1997) . . . . . . . . . . . . . 19

*American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387 (8th Cir. 2004) . . . .24

*Anderson v. USAA Casualty Ins. Co.*, 221 F.R.D. 250 (D.D.C. 2004) . . . . . .15, 16, 17, 18

*Burlington Insurance Co. v. Okie Dokie, Inc.*,
   329 F. Supp. 2d 45 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

*Burman v. Phoenix Worldwide Industries, Inc.*,
   384 F. Supp. 2d 316 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 28

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 37

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20, 21

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . .17

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . .18

*Geisler v. Petrocelli*, 616 F.2d 636 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc.*,
   936 F.2d 759 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23

*In re Northern Telecom Ltd. Securities Litigation*,
   1994 WL 455534 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*In re U.S. Office Products Co. Securities Litig.*,
   251 F. Supp. 2d 58 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Kowal v. MCI Communications*, 16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . .29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . .33

*Papasan v. Allain*, 478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

* *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) . . . . . . . . . *passim*

*Philadelphia Sunday Press, Inc. v. Consumers United Capital Corp.,*
   1987 WL 10242 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) . . . . . . . . . . . . . . . . . . . . . . . . .37

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wiggins v. AVCO Financial Services*, 62 F.Supp.2d 90 (D.D.C. 1999) . . . . . . . . . . . . .12

*Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) . . . . . 33, 34, 35

*Williams v. United States Elevator Corp.*, 920 F.2d 1019 (D.C. Cir. 1990) . . . . . . . . . .32

**State Cases**

*Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989) . . . . . . . . . . . . . .12

*American Ins. Co. v. Smith*, 472 A.2d 872 (D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Atkins v. Industrial Telecomm. Ass'n*, 660 A.2d 885 (D.C. 1995). . . . . . . . . . . . . . . . . .4

*Baker v. District of Columbia*, 494 A.2d 1299 (D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . .12

*Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,*
   680 A.2d 419 (D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Byrd v. Jackson*, 902 A.2d 778 (D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Cassidy v. Owen*, 533 A.2d 253 (D.C. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

*Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207 (D.C. 1997) . . . . . . . . . . . . . . . 4, 5

*Hagedorn v. Taggart*, 114 A.2d 430 (D.C. App. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hakki v. Zima Co.*, 2006 WL 852126 (D.C. Super. 2006) . . . . . . . . . . . . . . . . . . . . . . . 34

*Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610 (D.C. 1982) . . . . . . . . . . . . . . . . . . . . .14, 19

*Harrison v. Canada Dry Corp.*, 245 A.2d 642 (D.C. App. 1968) . . . . . . . . . . . . . . . 31, 32

*Herbin v. Hoeffel*, 727 A.2d 883 (D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Hochberg v. O'Donnell's Restaurant, Inc.*, 272 A.2d 846 (D.C. 1971). . . . . 10, 12, 26, 27

*Jones v. Howard*, 589 A.2d 419 (D.C. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130 (D.C. App. 1987) . . . . . . . . . . . . . 33

*Nelson v. Covington*, 519 A.2d 177 (D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ramos v. District of Columbia Dept. of Consumer and Regulatory Affairs*,
     601 A.2d 1069 (D.C. 1992) . . . . . . . . . . . . . . . . . . . ; . . . . . . . . . . . . . . . . . . . . . . 12

*Rosenberg v. Howle*, 56 A.2d 709 (D.C. App. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Scott v. District of Columbia*, 493 A.2d 319 (D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sowell v. Hyatt Corp.*, 623 A.2d 1221 (D.C. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Williams v. Baker*, 572 A.2d 1062 (D.C. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . 31, 32

**Federal Statutes and Legislative Materials**

Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*In the Matter of KFC Corporation*, Docket No. C-4118
(United States of America Federal Trade Commission September 9, 2004) . . . . . . . 25, 26

Nutrition Labeling and Education Act of 1990, 21 U.S.C. §§ 343, 343-1. . . 13, 37, 38, 39

**State Statutes**

* D.C. Consumer Protection Procedures Act, §28-3905(k)(1) . . . . . . . . . . . . . . . . . *passim*

**Secondary Sources**

Chick-fil-A website, *available at* http://www.chickfila.com/Nutrition.asp. . . . . . . . . 9, 30

Chick-fil-A Nutrition Information, *available at*
http://www.chickfila.com/MenuTable.asp?MenuItem=sandwich. . . . . . . . . . . . . . . . . . 30

Mayor's Task Force on the Future of the District of Columbia
Public Library System, *The District of Columbia Public Library
System: A Blueprint for Change*, November 2005, draft report
*available at* http://dclibrary.org/news/BRTF-Draft-Summary-Report.pdf. . . . . . . . . . . 21

Restatement (Second) of Torts, § 402A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 28

Wendy's website,
     *available at* www.wendys.com/about_us/news/index.jsp?news=5. . . . . . . . . . . . 9

COMES NOW the Plaintiff Arthur Hoyte, M.D., on behalf of himself and all those similarly situated, by and through counsel, and hereby files his Memorandum of Law with Points and Authorities in Opposition to Defendant's Motion to Dismiss. In support thereof, Plaintiff states as follows:

### PRELIMINARY STATEMENT

This lawsuit is brought by Arthur Hoyte, M.D. (hereinafter "Dr. Hoyte," "Plaintiff Hoyte," or "Plaintiff"), on behalf of himself and all others similarly situated and in the interests of the general public, pursuant to the laws of the District of Columbia, against YUM! Brands, Inc. (hereinafter "KFC" or "Defendant") arising out of KFC's use of partially hydrogenated oil in some of its food products, so that those products contain trans fat, a particularly dangerous and disease-causing type of fat.

KFC throughout its Motion couches this action as one of the very few so-called "obesity lawsuits," such as the one filed against McDonalds for its role in causing obesity. As this Opposition demonstrates, however, this is merely an attempt by KFC to create a red herring issue and a smoke screen in an attempt to distract the Court from the very real public health issue that is at the heart of this dispute, *to wit*, the dangerous and deadly diseases that are caused <u>directly</u> by trans fats, and the overwhelming proof that KFC, in at least the District of Columbia, has chosen to use unhealthy oils with trans fats rather than oils without trans fats, to the health damage of the buying public, separate and apart from the impact these oils might have on a consumer's waistline.

Trans fats are a particularly dangerous type of fat. In 2003, the National Academy of Health's Institute of Medicine concluded that even small amounts of trans fat in the

1

diet contribute to heart disease, and in 2004 an FDA advisory panel concluded that trans

fat is even more harmful to humans than saturated fat. Complaint ¶ 20.

Nevertheless, the amount of trans fat in KFC food products is significant. For

example:

- KFC's three-piece Extra Crispy fried chicken dinner with a biscuit and
  potato wedges contains 15 grams of trans fat;

- KFC's Pot Pie contains 14 grams of trans fat; and

- KFC's Large Popcorn Chicken contains 7 grams of trans fat.

Complaint ¶ 22.

Dr. Hoyte was aware that the FDA had advised that trans fats were unhealthy and

was trying to avoid consuming products that contained trans fat. Complaint ¶ 33.

Unfortunately, however, no consumer can tell that solid partially hydrogenated oil

is used instead of one of the healthier liquid oils available to KFC, because either type of

oil is invisible to consumers, and, in any case, at frying temperatures, both oils are liquid

and indistinguishable. Complaint ¶ 27.

On more than one occasion in 2004 and 2005, Dr. Hoyte bought food products at

the KFC store located at the intersection of Florida Avenue and North Capitol Street, in

Northeast Washington, and from time to time at other KFC locations in the District.

Complaint ¶ 30. Many of the food products Dr. Hoyte purchased at these KFC stores

were prepared using trans fats. Complaint ¶ 30. When Dr. Hoyte purchased these KFC

foods, he was unaware that they had been prepared with partially hydrogenated oil and

therefore contained trans fat. Complaint ¶ 31. This is because when Dr. Hoyte visited the

KFC locations in the District of Columbia, KFC did not display any warning or disclaimer to advise consumers of this fact. Complaint ¶ 32.

Accordingly, Dr. Hoyte alleges that KFC damaged him by failing to disclose and warn as to its use of partially hydrogenated oil in some of its foods and by selling products that KFC knew or should have known were unhealthy, inferior to foods that are fit for human consumption, and dangerous to the health of consumers, including Dr. Hoyte. Complaint ¶ 34.

In response to Dr. Hoyte's complaint, KFC has moved to dismiss for a wide variety of reasons.

Curiously, and in a seeming attempt to follow the advice that the best defense is a good offense, KFC begins by urging the Court to ignore Dr. Hoyte altogether, because one of his lawyers works for the non-profit Center for Science in the Public Interest ("CSPI"), which KFC alleges is "in many respects the real party in interest." (Def.'s Mot. at 1.) KFC does not provide evidentiary support for this allegation, yet it spends several pages of its Motion criticizing, questioning, and otherwise deriding CSPI's efforts with respect to trans fat. *See, e.g.,* Def.'s Mot. at 1-3, 7, and 23. CSPI is no more the "real party in interest" than is KFC's law firm, Debevoise & Plimpton. Accordingly, the Court should reject this argumentative, baseless, and irrelevant attack.

Moreover, much of KFC's statement of the background to its Motion consists of allegations of fact and expert opinion that are outside the record. Virtually all of these allegations are in furtherance of KFC's attempt to persuade the Court to focus on the macrocosm of the general regulation of labeling and obesity rather than the microcosm of

3

the complaints made by Dr. Hoyte, but almost none of them address the merits of its Motion.

Because they are irrelevant to the determination of KFC's Motion, Dr. Hoyte will refrain from responding to or disputing each of these newly made allegations. Instead, Dr. Hoyte respectfully refers the Court to his Complaint, which gives the background of his own claims—those that are actually now before the Court.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint must not be dismissed with prejudice prior to discovery unless "it appears beyond doubt that plaintiffs can prove no set of facts to support their claim that would entitle them to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2nd Cir. 1980). "A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and 'admits all facts well pleaded . . . .'" *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997) (quoting *American Ins. Co. v. Smith*, 472 A.2d 872, 874 (D.C. 1984)). To that end, all facts and inferences are to be construed in a light most favorable to plaintiff such that the complaint's allegations are taken as true. *See id.* (*citing Atkins v. Industrial Telecomm. Ass'n*, 660 A.2d 885, 887 (D.C. 1995)).

Moreover, a complaint is sufficient if it "'fairly puts the defendant on notice of the claim against him.'" *Herbin v. Hoeffel*, 727 A.2d 883, 887 (D.C. 1999) (quoting *Scott v. District of Columbia*, 493 A.2d 319, 323 (D.C. 1985)); *see also Nelson v. Covington*, 519 A.2d 177, 178 (D.C. 1986). "Accordingly, the liberal rules of pleading, will normally

4

protect a plaintiff from dismissal at the pleading stage when the complaint can be said to

state a claim if all inferences are drawn in the plaintiff's favor." *Duncan*, 702 A.2d at 210

(citing *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680

A.2d 419, 430 (D.C. 1996)).

The Court should seek only to determine whether the claimants are entitled to

offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

("Indeed it may appear on the face of the pleadings that a recovery is very remote and

unlikely but that is not the test."). The court must accept all of a plaintiff's allegations as

true, *Papasan v. Allain*, 478 U.S. 265, 283 (1986), and all inferences should be

"construed favorably to plaintiff." *Duncan*, 702 A.2d at 210. As set forth below, Dr.

Hoyte more than adequately alleges the elements of his causes of action. The Motion to

Dismiss should therefore be denied.

## ARGUMENT

### I.    DR. HOYTE'S IMPLIED WARRANTY AND DCCPPA CLAIMS ARE WELL-FOUNDED, AND KFC BREACHED ITS DUTY TO WARN ITS CONSUMERS OF THE PRESENCE OF TRANS FATS IN ITS FOODS.

Dr. Hoyte's claims for breach of the implied warranty of merchantability and for

violations of the D.C. Consumer Protection Procedures Act, §28-3905(k)(1)

("DCCPPA") are both grounded in the fact that some of KFC's food products contain so

much trans fat that they are neither "of at least fair, average quality" nor "fit for human

consumption." Complaint ¶¶ 40, 46. The Defendant attacks both claims on the basis that

KFC believes it is under no duty to warn its consumers that when they consume KFC

foods prepared using partially hydrogenated oil, they are consuming trans fats.

KFC's argument in favor of being able to continue concealing these facts rests on the misplaced proposition that the "potential health risks associated with excessive consumption of fat" are "commonly known." (Def.'s Mot. at 11.) This argument is faulty for several reasons, which the Plaintiff details further below, not the least of which is that even if KFC were correct that the health risks of eating fats are "common knowledge," that is irrelevant, because the issue in this case is not excessive fat consumption. Instead, this suit is about the risks to the heart caused by partially hydrogenated oil, an ingredient that KFC chooses to use, even when safer ingredients are available. The fact that partially hydrogenated oil is a "fat" is beside the point.

Contrary to KFC's attempts to mislead the Court in couching this case as an obesity lawsuit against the fast food industry, the danger in using trans fats — as Dr. Hoyte's Complaint makes clear — is moored to the fact that the dangers of trans fat are not generally known, consumers do not expect it to be present in their food (as opposed to less dangerous fats in general), consumers don't understand that partially hydrogenated oil contains trans fats and is harmful to their health, and only a minimal amount of trans fats need to be consumed in order to increase the risk to the consumer's health. The point is that trans fat should be completely avoided wherever possible. Complaint ¶ 20.

KFC has created a novel, but not properly based, "common knowledge" defense based on the Restatement (Second) of Torts § 402A, comments i and j, which it posits at least six times to counter Dr. Hoyte's implied warranty and DCPPA claims. (Def.'s Mot. at 4, 7, 11, 12, 27, 31.) A bald assertion that something is "common knowledge" is no substitute for evidentiary support of an allegation. Accordingly, as a threshold matter, to determine what in fact amounts to the "common knowledge" of the public would require

significant fact-finding by the Court based on matters outside the record, which is inappropriate on a motion to dismiss. Therefore, because they are both unsupported and improperly raised at this stage, these allegations should be ignored.

However, even were the Court to undertake the task of determining what is within the public's "common knowledge," it should reject KFC's argument because (1) the Restatement § 402A does not apply here, and (2) KFC's use of partially hydrogenated oil and the presence of transfats in its foods are not "commonly known" by KFC consumers.

The Restatement § 402A, as cited by KFC, states that a "seller is not required to warn with respect to products, or ingredients in them, which are **only** dangerous, or potentially so, when consumed in **excessive quantity, or over a long period of time**, when the danger, or potentiality of danger, is **generally known and recognized**." (Def.'s Mot. at 11) (quoting Restatement (Second) of Torts, § 402A, comments i and j) (emphasis added). However, § 402A does not apply here because KFC's liability is not grounded in either excess consumption of KFC foods that contain trans fats, or consumption of those foods over a long period of time, nor is trans fat a danger that is commonly known and recognized. To the contrary, Dr. Hoyte's Complaint charges that there are "deadly dangers inherent in the use of trans fat" (Pltf.'s Compl. ¶ 26) and consumers merely have a "growing awareness of trans fat and the need to avoid it" (Pltf.'s Compl. ¶ 29) as opposed to a "common knowledge" of its presence and dangers.

Moreover, KFC argues that partially hydrogenated oil and trans fats are not unreasonably dangerous – that they are merely "common ingredients or nutrients" – and therefore KFC has no duty to warn its consumers of their presence. (Def.'s Mot. at 12.) In support of this argument, KFC provides the Court with "bad butter" as an example from

7

the Restatement § 402A of what constitutes an unreasonably dangerous product of which

a seller would have a duty to warn: "[g]ood butter is not unreasonably dangerous merely

because . . . it deposits cholesterol in the arteries and leads to heart attacks; but bad butter,

contaminated with poisonous fish oil, is unreasonably dangerous." (Def.'s Mot. at 11.) In

selectively quoting from this section, however, KFC has neglected to mention "good

tobacco" as another example used by the Restatement as not being an unreasonably

dangerous product. Section 402A states: "[g]ood tobacco is not unreasonably dangerous

merely because the effects of smoking may be harmful; but tobacco containing something

like marijuana may be unreasonably dangerous." Restatement (Second) of Torts § 402A,

comment i. Accordingly, not only is § 402A, which was drafted in 1960, inapposite to Dr.

Hoyte's claims, but it is also entirely out of touch with the realities of modern society.

Indeed, at least one court has already suggested that the Restatement § 402A

should be rendered "obsolete" because of its failure to account for the dangers of

cigarette smoking and the potential liability facing the tobacco industry from smoking-

related injuries. *Pelman v. McDonald's Corp.*, 237 F.Supp. 2d 512, 530 n.18 (S.D.N.Y.

2003). Regarding § 402A's "lack of foresight" the court stated "perhaps the

Restatement's vision concerning over-consumption may be rendered obsolete. Seemingly

'good' products may be manipulated such that they are more akin to fuel-oil

contaminated whiskey and marijuana-laced cigarettes." *Id.*

KFC says that the decisions about what food to eat are "matters of consumer

choice." (Def.'s Mot. at 13.)

Dr. Hoyte agrees. However, unless consumers have the same information that is exclusively within the knowledge of KFC—which of its restaurants use trans fat to prepare which foods — it is impossible to make that choice.

It is not a simple matter to determine which KFC foods have trans fat and which do not. Even as to fried foods, it is not a given that a food is fried in trans fat. For example, KFC's competitor Wendy's recently announced that it was switching to a healthier oil to fry its French fries and chicken.  Wendy's website, *available at* www.wendys.com/about_us/news/index.jsp?news=5. In addition, as is further described *infra* at III.A, Chick-fil-A prepares its "signature Chick-fil-A filet, Nuggets, and Chick-n-Strips . . . in 100% non-hydrogenated peanut oil" so that these items do not contain trans fats. Chick-fil-A website, *available at* http://www.chickfila.com/Nutrition.asp.

But KFC not only uses partially hydrogenated oil to fry its chicken and other fried foods, but also even uses partially hydrogenated oil in products that it does not fry, resulting in a high trans fat content. For example, according to Exhibit 13 to KFC's Motion, "KFC Famous Bowls — Mashed Potato with Gravy" have 4.5 grams of trans fat and "KFC Famous Bowls – Rice with Gravy" contains 4 grams of trans fat. Even its desserts contain trans fat: its "Apple Pie Mini's" have 7.0 grams of trans fat. Therefore, even consumers who might avoid the fried foods at KFC, thinking they were avoiding consuming trans fats, may still unknowingly consume this dangerous ingredient without the benefit of making an informed decision.

KFC says that its "diligent research" has not revealed one case anywhere recognizing a duty on food suppliers "to disclose ingredients or nutrients that do not cause any immediate harm but pose a potential health risk." (Def.'s Mot. at 10.)

9

Perhaps if KFC had been a bit more diligent, it would have noticed the language in one of the primary authorities that it cites to the Court. In *Pelman v. McDonald's*, United States District Judge Robert Sweet first noted: "This opinion is guided by the principle that legal consequences should not attach to the consumption of hamburgers and other fast food fare ***unless consumers are unaware of the dangers of eating such food***." *Pelman*, 237 F.Supp. 2d at 517 [emphasis added]. Judge Sweet added: "On the other hand, ***consumers cannot be expected to protect against a danger that was solely within McDonalds' knowledge***. Thus, one necessary element of any potentially viable claim must be that McDonalds' products involve a danger that is not within the common knowledge of consumers." *Id.* at 518.

Judge Sweet concluded that "[t]he plaintiffs fail to allege that the information with regard to the nutritional content of McDonalds' products was solely within McDonalds' possession or that a consumer could not reasonably obtain such information." *Id.* at 529.

Judge Sweet's observations are squarely on point here and highlight the propriety of Dr. Hoyte's claim. Dr. Hoyte alleges that consumers have no way of telling that KFC used partially hydrogenated oil to prepare its foods that contain trans fats. KFC knows, but chooses not to let its customers in on the secret.

District of Columbia law is in accord. In a case where the plaintiff claimed damage from an ingredient of a restaurant food product, the District of Columbia Court of Appeals held that "the test is — what should reasonably be expected by the consumer to be in the food served to him." *Hochberg v. O'Donnell's Restaurant, Inc.*, 272 A.2d 846, 848 (D.C. 1971).

10

It does not avail KFC that it allegedly provides nutrition information on its website, because (1) material nutrition information is needed at the time of purchase, not later; (2) many low-income and other consumers do not have ready access to the Internet; and (3) some of KFC's stores use trans-fat-free cooking oils. Similarly, KFC's allegation that it provides information in stores is of no help. KFC has not established that it does in fact make the information available in a meaningful manner (i.e., not on the wall next to the restroom or hidden behind a promotional display), or even that the material allegedly available in the stores does in fact contain trans fat information.

Another reason the Court should ignore KFC's claims that its website is the solution to all questions about trans fat is that the website is not accurate. KFC's Exhibit 13 purports to be a nutrition guide available at its website. That website also prominently promotes the "KFC Nutrition Calculator." www.yum.com/nutrition/menu.asp?brandID_Abbr=2_KFC.

However, the KFC Nutrition Calculator is not reliable. For example, KFC Exhibit 13 says that a slice of Apple Pie has 2.5 grams of trans fat and that a slice of Lemon Meringue Pie has 1.5 grams of trans fat. The KFC Nutrition Calculator, on the other hand, consistently reports that both Apple Pie and Lemon Meringue Pie have *no trans fat at all*. See Exhibit 1 to this brief, consisting of pages printed from the KFC Nutrition Calculator webpages (with the trans fat information highlighted). Accordingly, even if consumers were to go to KFC's website to attempt to obtain accurate information about the nutritional contents of what they were consuming, the website provides no reliable means for obtaining this information and therefore should not be considered as an example of KFC having met its obligation to disclose important nutrition information to

11

its customers, such as Dr. Hoyte. Moreover, as is detailed, *infra* at II.C., not all

consumers have computers available to them so that they can obtain information about

the food they are consuming.

  With regard to Dr. Hoyte's claims under the DCCPPA, KFC urges the Court that

policy reasons compel the conclusion that KFC should not be held responsible for

violating the requirements of this consumer protection statute, in essence telling the Court

to act in a legislative role by rewriting District law so that it does not apply to food sellers

like KFC. (Def.'s Mot. at 4-5)

  The DCCPPA applies to all manner of merchants, including food sellers.

*Hochberg*, 272 A.2d at 848; *Wiggins v. AVCO Financial Services*, 62 F.Supp.2d 90

(D.D.C. 1999) (loan and mortgage companies); *Adam A. Weschler & Son, Inc. v. Klank*,

561 A.2d 1003 (D.C. 1989) (auctioneer); *Baker v. District of Columbia*, 494 A.2d 1299

(D.C. 1985) (home repair contractor); *Byrd v. Jackson*, 902 A.2d 778 (D.C. 2006)

(foreclosure avoidance company); *Ramos v. District of Columbia Dept. of Consumer and

Regulatory Affairs*, 601 A.2d 1069 (D.C. 1992) (shoe and leather goods repairman).

  KFC argues, however, that "it would be inconsistent with the history and purpose

of the DCCPPA to read into it a general duty on restaurants to disclose ingredients or

nutrients." (Def.'s Mot. at 14.) This assertion is inapposite for two reasons. First, despite

KFC's best efforts to turn this case into a plebiscite on overall nutrition labeling policy,

which Dr. Hoyte discusses *infra* at IV.C., this action merely seeks to address the

enormous risks of this one food ingredient. Trans fat stands alone among the other

nutritional horribles that KFC trots out—salt, saturated fat, and so on — because it is the

only ingredient for which there is no Daily Value prescribing the maximum amount to consume in a day.

Second, the DCCPPA is meant to apply to all manner of wrongful marketing practices. If a finder of fact agrees with Dr. Hoyte that (1) KFC failed to state the material fact that it used trans fats and (2) KFC sold consumer goods in a condition or manner not consistent with the implied warranty of merchantability, Complaint ¶ 46, then the DC laws must be applied. Contrary to KFC's exhortations that the DC laws under which Dr. Hoyte has sued are not specific as to restaurants (Def.'s Mot. at 4) in fact D.C. Code §28:2-314 expressly covers "the serving for value of food or drink to be consumed either on the premises or elsewhere."

In its final attempt to persuade the Court that it has no duty to tell its customers that they are eating food made with a known harmful ingredient, KFC says that applying DC law to its practices conflicts with "both federal and District statutes and regulations specifically governing the nutritional labeling of restaurant food." (Def.'s Mot. at 14.)

However, the problem with this argument is that **KFC has failed to provide even one statute or regulation that does govern the nutritional labeling of restaurant food**. KFC's citations are to the Nutrition Labeling and Education Act of 1990 ("NLEA"), which KFC argues explicitly exempts restaurants from its labeling requirements in § 343(q)(5)(A)(i) and requires states to do so as well, and to the fact that the District has not yet passed its own statute expressly requiring such disclosures (Def.'s Mot. at 14-15.)

For a detailed discussion of this aspect of the NLEA, which actually preserves to the states the right to regulate nutrition labeling by restaurants, 21 U.S.C. § 343-1, Dr. Hoyte respectfully refers the Court to section IV.C of this brief. Moreover, the absence of

13

regulation is not the same as affirmative regulation, and therefore the District's failure to regulate labeling would not conflict with this Court's decision to impose on KFC a duty to warn its consumers when they are consuming unreasonably dangerous foods. Accordingly, KFC's Motion to Dismiss on these grounds should be denied.

## II.    DR. HOYTE PROPERLY PLED HIS CLAIM FOR NEGLIGENT MISREPRESENTATION.

A defendant is liable for negligent misrepresentation where (1) the defendant makes a false statement or omission of material fact (2) in violation of a duty to exercise reasonable care, and (3) "[t]he plaintiff reasonably *relied* upon the false information to his detriment." *Hall v. Ford Enterprises, Ltd.*, 445 A.2d 610, 612 (D.C. 1982). In contrast to fraud, "negligent misrepresentation does not require a showing of scienter," *i.e.* "the intent to deceive . . . ." *Burman v. Phoenix Worldwide Industries, Inc.*, 384 F. Supp. 2d 316, 337 at n. 16, 17 (D.D.C. 2005).

Accordingly, in pleading his third count for negligent misrepresentation, Hoyte properly alleged that KFC (1) "deceptively advertised and misrepresented to its customers and consumers [including Dr. Hoyte], both in its stores and on its website, that KFC gives consumers 'the best food' and that KFC food products could be consumed as part of a nutritionally healthy lifestyle" (Compl. ¶¶ 28, 57), (2) in violation of a duty of care owed to Dr. Hoyte and D.C. consumers by reason of its "knowledge and expertise about the nutritional values of its food products and the harmful health effects associated with consuming trans fats" (Compl. ¶ 55), and (3) Dr. Hoyte and D.C. Consumers foreseeably and reasonably relied upon these misrepresentations to their detriment. (Compl. ¶¶ 58 - 62).

14

A.    **Claims for Negligent Misrepresentation Must Only Satisfy the Liberal Notice-Pleading Standards of Rule 8 and Do Not Need To Satisfy the Stricter Requirements Of Rule 9(b).**

KFC argues that Fed. R. Civ. P. 9(b), which requires "all averments of fraud and mistake . . . [to] be stated with particularity," applies to claims for negligent misrepresentation and that Dr. Hoyte has not satisfied this heightened pleading standard. (Def's Mot. at 18). This argument is incorrect because, among other things, it is flatly contradicted by recent caselaw that prescribes the liberal notice-pleading requirements of Rule 8 to apply to claims for negligent misrepresentation.

KFC relies on District Court Judge Ricardo Urbina's decisions in *Anderson v. USAA Casualty Ins. Co.*, 221 F.R.D. 250 (D.D.C. 2004) and *In re U.S. Office Products Co. Securities Litig.*, 251 F. Supp. 2d 58 (D.D.C. 2003) to bolster its argument that some higher pleading standard is required, but KFC fails to advise the Court of a later decision by Judge Urbina, as well as other recent decisions of this Circuit, that directly contradict those decisions and instead hold that Rule 8 applies to claims for negligent misrepresentation under District of Columbia law. *See Burlington Insurance Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 50 (D.D.C. 2004); *Burman*, 384 F. Supp. 2d at 336-337.

In *Burlington*, Judge Urbina distinguished his earlier opinion in *U.S. Office Products* as "deal[ing] primarily with the effect of integration clauses and the exclusion of parol evidence in contracts," and went on to explicitly hold that "[i]t is not necessary for the plaintiff to plead all elements of his prima facie case [for negligent misrepresentation] in the complaint . . . . The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." 329 F. Supp. 2d at 49-50; Fed. R. Civ. P. 8 (requiring claims for

15

relief to contain merely "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). Accordingly, although *Anderson* and *U.S. Office Products* applied Rule 9(b) to claims of negligent misrepresentation, they are no longer the standard in this jurisdiction on this point and the Court should apply Rule 8 to determine that Dr. Hoyte has properly pled his claim.

This same conclusion was reached by the D.C. District Court in *Burman v. Phoenix Worldwide*. 384 F. Supp. 2d at 336-37. There the plaintiffs alleged a claim of negligent misrepresentation and the court, addressing the proper pleading standard, held that "Rule 8's requirement that the complaint set forth a short and plain statement of the claim" applies to negligent misrepresentation, and the stricter pleading requirements of Rule 9(b) do not. *Id.* at 337.

Accordingly, as D.C. caselaw is straightforward on this issue, KFC's Motion to Dismiss on these additional grounds should also be denied.

However, even were the Court to decide that Rule 9(b) applies, it still should not dismiss Dr. Hoyte's negligent misrepresentation claim, as Dr. Hoyte has satisfied even the stricter particularity standard mandated by that Rule.

### B.    Dr. Hoyte's Pleading Satisfies Even The Heightened Rule 9(b) Standard.

"[B]ecause Rule 9(b) is 'chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud.'" *Burman*, 384 F. Supp. 2d at 325 (quoting *U.S. Office Products*, 326 F. Supp. 2d at 73). At the same time, however, "Rule 9(b)'s particularity requirement does not abrogate Rule

16

8's general requirement that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise and direct." 326 F. Supp. 2d at 74.

As Dr. Hoyte demonstrates, *supra* at Section II.A, Rule 8 governs the pleading of negligent misrepresentation claims under D.C. law and Dr. Hoyte has satisfied its requirements. In addition, however, although the cases upon which KFC relies are inapposite to this case, they are useful to demonstrate that Dr. Hoyte here would also satisfy even the particularity requirement of Rule 9(b), should the Court determine that it applies.

In *Anderson*, the plaintiff sued a group of defendants including, among others, a contractor-defendant and subcontractor-defendant for damages she sustained due to mold in the plaintiff's condominium, which the contractor-defendant claimed to have fixed. The *Anderson* court dismissed the plaintiff's negligent misrepresentation claim against the subcontractor-defendant because the plaintiff's general allegations against the defendant as a whole failed to put the subcontractor-defendant on notice of any duty it owed to the plaintiff. 221 F.R.D. at 225. "Indeed, the plaintiff [fell] short of pleading any specific allegations as to [the subcontractor-defendant's] conduct that would support the gravamen of her claim, advancing nothing more than what appear[ed] to be a blanket belief that the defendants as a group 'misrepresented or withheld material and significant facts.'" *Id.* (quoting plaintiff's complaint).

By contrast, in this case Dr. Hoyte pled the "who, what, when, where, and how" regarding KFC's misrepresentation, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), Def's Mot. at 18, by averring that (1) the misstatements were made by KFC, (2) KFC claimed to provide the "best food" and that its food could be consumed as part of a

healthy lifestyle, Compl. ¶ 57, (3) the statements were made by KFC and relied upon by Dr. Hoyte before he purchased KFC foods containing trans fats, Compl. ¶¶ 58, and (4) KFC made the statements in its stores and on its website, Compl. ¶¶ 28, 57. Accordingly, when reconciling the requirements of Rule 9(b) with the brevity mandated by Rule 8, Dr. Hoyte has adequately notified KFC of the conduct with which it is charged even under a heightened pleading standard, and KFC's Motion to Dismiss should be denied.

Finally, should the Court determine otherwise, Dr. Hoyte would request that the Court grant him leave to amend the Complaint for curative purposes. "Ordinarily, when a court grants dismissal under Rule 9(b), it provides the claimant leave to amend the pleading to achieve the particularity required by Rule 9(b) and in accordance with Rule 15(a)." *Anderson*, 221 F.R.D. at 255. It is only when "there exist no facts, consistent with the challenged complaint, that could cure the pleading deficiency" that dismissal with prejudice is warranted. *U.S. Office Products*, 251 F. Supp. 2d at 75 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). That is not the case here, where Dr. Hoyte's Complaint already sets forth the circumstances of the negligent misrepresentations, which could only be further substantiated by amending the Complaint to include greater specificity.