**C.    Whether Dr. Hoyte Reasonably Relied On KFC's Misrepresentations Is A Question Of Fact That Is Inappropriate For Resolution On A Rule 12(b)(6) Motion To Dismiss, And Dr. Hoyte Has Sufficiently Stated A Claim.**

KFC further argues under Fed. R. Civ. P. 12(b)(6) that Dr. Hoyte fails to state a claim for negligent misrepresentation because it would be impossible for Dr. Hoyte or D.C. Consumers to rely on any material misrepresentations that were made on KFC's website, since the website also contains on a separate web page an ingredient list and nutritional information.

As a threshold matter, it is important to note that the standard for reliance in the instant case is whether Dr. Hoyte "reasonably relied" on the statements at issue. *Hall*, 445 A.2d at 612; *Burlington*, 329 F. Supp. 2d at 49. Accordingly, the reasonableness of Dr. Hoyte's reliance is a question of fact that is inappropriate for resolution on a motion to dismiss, unless it is clear that no reasonable person could be misled by the statements. *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (holding that the plaintiff did not adequately plead that her reliance on MCI's billing statements, which rounded up each call to the full minute, was reasonable because "no reasonable customer could actually believe that each and every phone call she made terminated at the end of a full minute"); *Philadelphia Sunday Press, Inc. v. Consumers United Capital Corp.*, 1987 WL 10242 at * 1 (D.D.C. 1987) (denying defendant's motion to dismiss for failure to state a claim because "the question of reasonable reliance is a question of fact not amenable to adjudication on the 'barebones' facts contained in the complaint."); *Cassidy v. Owen*, 533 A.2d 253, 255 (D.C. App. 1987) (refusing on a motion for summary judgment to dismiss the plaintiff's equitable estoppel claim because "the reasonableness

of the reliance upon a misrepresentation is a question of fact for which disposition by summary judgment is generally inappropriate.").

KFC has argued that the reasonableness of Plaintiff's reliance can be determined by citing to certain federal securities law cases. However, those cases can be distinguished from the facts at issue here, because in in the context of the federal securities law cases relied upon by KFC, the question was whether the "reasonable investor" would be misled as to the "nature of the investment." *I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *In re Northern Telecom Ltd. Securities Litigation*, 1994 WL 455534 (S.D.N.Y. 1994). In those cases the plaintiffs asserted fraud claims pursuant to federal securities laws and therefore they were required to plead their claims with specificity under Fed. R. Civ. P. 9(b). *Pincus*, 936 F.2d at 760-61; *In re Northern Telecom*, 1994 WL 455534 at *1. Accordingly, the courts in those cases were capable of making an objective determination as to the plaintiffs' reliance.

Here, however, to determine whether Dr. Hoyte's reliance was reasonable, the Court would have to look outside the complaint, in contravention of the standard prescribed by Rule 12(b)(6), and would need to act as the factfinder. Accordingly, granting a Motion to Dismiss is not proper at this time. However, should the Court be willing to consider certain facts outside the pleading, then when viewing the facts in the light most favorable to the Plaintiff, the Court should still deny KFC's argument because KFC has failed to satisfy its burden of demonstrating "beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ." *Conley*, 355 U.S. at 45-46.

KFC assumes that the Plaintiff's reliance on KFC's misrepresentations stems only from his use of the Internet to access KFC's website. (Def's Mot. at 19-20.) In doing so, KFC completely ignores the Plaintiff's allegation in the Complaint that "KFC has deceptively advertised and misrepresented to its customers and consumers, *both in its stores and on its website* . . . ." (Compl. ¶ 28) (emphasis added). Accordingly, Plaintiff's claims of misrepresentation are not limited only to those contained on KFC's corporate website. This alone is sufficient to show that Hoyte is able to prove a "set of facts in support of his claim . . . ." *Conley, supra.*

In addition, in making this conclusion KFC also assumes that all D.C. consumers have access to a computer and to the Internet, which is wholly untrue. To the contrary, KFC serves many low-income consumers in the District of Columbia who do not own their own computers with access to the Internet, and computers are hard to find even in D.C. public libraries. The Mayor's Task Force on the Future of the District of Columbia Public Library System, which was formed to assess and overhaul the District's dilapidated system of public libraries, found that computers are "scarce" in public libraries here and that an additional 400 computers with access to the Internet would be needed "to give DC residents the same ability to go on-line as the citizens of other cities of the same size." Mayor's Task Force on the Future of the District of Columbia Public Library System, *The District of Columbia Public Library System: A Blueprint for Change*, November 2005, draft report available at http://dclibrary.org/news/BRTF-Draft-Summary-Report.pdf.

KFC's argument fails, however, even for those D.C. Consumers who may have detrimentally relied upon false statements on KFC's website. The fact that truthful

statements may be contained within the same medium as a defendant's misrepresentations does not automatically absolve a defendant from liability. However, KFC likens the federal securities cases it cites in its Motion to the instant matter, arguing that the Court should consider the misrepresentations on KFC's website in the context of the entire site, to conclude that KFC's online claims that its foods are of nutritionally superior quality are not actionable because other areas of its website provide ingredient lists and nutritional content. (Def's Mot. at 20.)

First, those federal securities cases can be distinguished because they implicate the "bespeaks caution" doctrine, which may render certain misrepresentations and omissions made by a corporate defendant non-actionable where the defendant has made a sufficient disclaimer. *Pincus*, 936 F.2d at 763. No such doctrine applies here.

In addition, this action is a far cry from the securities cases that KFC cites. In *Pincus,* the plaintiff alleged that the defendant company made one misrepresentation in its prospectus regarding the trading value of closed-end fund shares, which the plaintiff relied upon to her detriment in making an investment decision. *Pincus*, 936 F.2d at 761. The court held that the statement at issue was not materially misleading under the federal securities laws because it had nothing to do with predicting the value of the shares and merely distinguished open-end fund shares from closed-end fund shares. *Id.* at 763. The court found the challenged language to actually be true and qualified, if not further explained, by other information clearly displayed throughout the prospectus, and that the prospectus contained sufficient statements to invoke the aforementioned "bespeaks caution" doctrine, and specifically contained language that "unambiguously communicates the importance of reading all relevant material contained within the

prospectus." *Id.* Accordingly, the court held that a "reasonable investor concerned with the market performance of Fund shares" would find that the general language at issue, compared to the detailed language contained throughout the prospectus, was "so obviously unimportant" to making an investment decision. *Id.*

Here, however, even if a D.C. Consumer, including Dr. Hoyte, viewed false statements on KFC's website he or she may not have been viewing the site for the purpose of obtaining nutritional information. The fact that a D.C. Consumer may have come across the false statements KFC made online regarding nutritional quality does not mean that he or she knew or should have known to look beyond these claims of nutritional value, and to look for the ingredient lists and nutritional content elsewhere, nor would the viewer have been prompted to do so given that the reasonable reliance on KFC's assertions of nutritional quality.

Whereas the investor in *Pincus* read the prospectus for the specific purpose of obtaining stock purchase information, consumers visit the KFC website for a number of reasons including, but not limited to, finding information about promotional products or playing the online games for kids that KFC provides. Moreover, consumers should not be expected to navigate KFC's website with the same detail that an investor contemplating a stock purchase would use in reading a company's prospectus, merely so the consumer could understand KFC's misrepresentations in their so-called context.

Accordingly, as the Plaintiff has sufficiently stated a claim for which relief may be granted, KFC's Motion to Dismiss should be denied.

**D.    KFC's Statements Did Not Amount To Puffery, However This Determination Should Not Be Made On A Motion To Dismiss.**

"Puffery is defined as exaggerated general statements that make no specific claims on which consumers could rely." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 n. 14. To determine whether a statement amounts to a misrepresentation or mere puffery, the court necessarily must consider the circumstances in which the statement is made, including, but not limited to, the manner by which the statements are communicated, whether the statement relates to the present or to future expectations, in addition to subjective factors such as the knowledge of the speaker compared to the knowledge of the listener, and the listener's perception of the speaker's knowledge. *See American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391-394 (8th Cir. 2004); *Hagedorn v. Taggart*, 114 A.2d 430, 431 (D.C. App. 1955) *Rosenberg v. Howle*, 56 A.2d 709, 711 (D.C. App. 1948).

Accordingly, as this requires consideration of facts outside the pleadings, which is inappropriate in a Rule 12(b)(6) motion to dismiss, courts leave the determination as to whether a statement constitutes puffery for the trier of fact. *Hagedorn*, 114 A.2d at 431; *American Italian Pasta Company*, 371 F.3d at 389 (resolving appeal from a summary judgment decision of a district court, which denied an argument regarding puffery in a motion to dismiss because it would have to consider facts outside the pleadings). Therefore, this argument should not be resolved by the Court at this juncture, and KFC's Motion to Dismiss on these grounds should be denied.

Even so, it is clear that KFC's claims that it produced the "best food" and that its food could be part of a healthy lifestyle do not constitute puffery. First, given that whether a statement constitutes puffery requires a fact-driven analysis of the context in

24

which the statement was made, KFC cannot make the blanket assertion that in all circumstances statements as to quality and superiority necessarily amount to puffery, much less that the law is "well-established" on this subject. *Id.*; Def.'s Mot. at 21.

Moreover, since KFC has claimed expertise on what constitutes a healthy lifestyle, and as the manufacturer and producer of its foods, it is in the unique position to possess a "knowledge and expertise about the nutritional values of its food products" and the means by which they are prepared, Compl. ¶ 55, and it was reasonable for Dr. Hoyte to rely on their assertions of nutritional quality. Furthermore, to the extent that KFC purports to give its consumers health advice that is consistent with the federal government's recommendations, Def's Mot. at 22-23, KFC has only increased the consumer's already reasonable inclination to rely on these misrepresentations.

Indeed, KFC has demonstrated a pattern and practice of promoting its foods as part of a nutritional diet and is fully aware of the misleading nature of such promotions. In 2004, the FTC took action against KFC with regard to its misrepresentations, which the FTC deemed to "constitute unfair or deceptive acts or practices." *In the Matter of KFC Corporation*, Docket No. C-4118 (United States of America Federal Trade Commission September 9, 2004), Complaint *available at* www.ftc.gov/os/caselist/0423033/040917comp0423033.pdf. There, KFC "represented, expressly or by implication that eating KFC fried chicken, specifically two Original Recipe fried chicken breasts, is better for a consumer's health than eating a Burger King Whopper" and that "that eating KFC fried chicken is compatible with 'low carbohydrate' weight loss programs." *Id.*

Here, KFC attempts to justify its misrepresentations by arguing that "[i]ngestion of food from KFC in moderation is not inconsistent with a healthy lifestyle . . . ." (Def.'s Mot. at 23.) The FTC action, however, put KFC on notice that stretching the truth to fit its statements regarding nutritional quality and healthfulness within some semblance of factual accuracy does not change the fact that those statements are misleading. Indeed, the FTC condemned KFC's advertisement that claimed, due to the nutritional content of its foods, "if you're watching carbs and going high-protein, go KFC" and "[f]or a fresh way to eat better, you gotta KFC what's cookin'!" FTC Compl. at 3.

KFC elected to settle with the Commission, agreeing to a settlement that, among other things, prohibits the company from making these or similar claims, "in any manner, expressly or by implication," about the nutritional value, weight-loss benefits, or other health benefits of its chicken products and meals unless the company can substantiate the claims. *In the Matter of KFC Corporation*, Decision and Order *available at* http://www.ftc.gov/os/caselist/0423033/040917do0423033.pdf.

Accordingly, KFC's statements are more than just puffery and are actionable, and accordingly KFC's Motion to Dismiss should be denied.

## III.    DR. HOYTE ADEQUATELY PLED HIS CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.

In the District of Columbia, in cases where the claimant was injured from an object in food served in a restaurant, courts apply the reasonable expectation test to determine whether the implied warranty of merchantability has been breached. The reasonable expectation test questions whether the object "should reasonably be expected by the consumer to be in the food served to him." *Hochberg.*, 272 A.2d 846, 848 (D.C. App. 1971). Whether the consumer's expectations were reasonable, however, is a

question for the trier of fact, *id.* at 849, and accordingly should not be determined on a

motion to dismiss. Therefore, KFC's Motion to Dismiss should be denied. Nevertheless,

out of an abundance of caution, the Plaintiff will address the reasonableness of his

expectations in turn.

A.    **Dr. Hoyte Did Not Expect, Nor Would It Be Reasonable For Him To Expect, KFC's Foods To Contain Trans Fats.**

The use of partially hydrogenated oil and the presence of trans fats is completely

undetectable to the ordinary consumer because the partially hydrogenated oil used to

prepare the foods "appears as merely a hot liquid in the frying equipment seen by

consumers." (Compl. ¶ 27.) In addition, while consumers may expect certain fast foods to

contain high levels of fat in general, there is no expectation that these foods contain trans

fats, which not only are higher in calories than carbohydrates or protein, as are other fats,

but are uniquely dangerous because they are directly linked to deadly diseases and are

even more conducive to heart disease than saturated fat. Thus, the Plaintiff's claims in

this matter can be distinguished from those in so-called "obesity lawsuits" that target fast

food chains for their contribution to obesity:

> [L]egal consequences should not attach to the consumption of
> hamburgers and other fast food fare **unless consumers are
> unaware of the dangers of eating such food** . . . As Sir Francis
> Bacon noted . . . knowledge is power. Following from this
> aphorism, one important principle in assigning legal responsibility
> is the common knowledge of consumers. If consumers know (or
> reasonably should know) the potential ill health effects of eating
> [KFC foods containing trans fats], they cannot blame [KFC] if
> they, nonetheless, choose to satiate their appetite with a surfeit of
> supersized [KFC] products. On the other hand, consumers cannot
> be expected to protect against a danger that was **solely within
> [KFC's] knowledge**. Thus, one necessary element of any
> potentially viable claim must be that [KFC's] products **involve a
> danger that is not within the common knowledge of consumers**.

*Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 517-18 (S.D.N.Y. 2003) (emphasis added).

> Moreover, the Court stated:
>
> As long as a consumer exercises free choice with appropriate knowledge, liability for negligence will not attach to a manufacturer. It is only when that free choice becomes but a chimera – for instance, by the masking of information necessary to make the choice, such as the knowledge that eating [KFC] with a certain frequency would irrefragably cause harm – that manufacturers should be held accountable.

*Id.* at 533.

The *Pelman* court held that if a food is "'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics' . . . consumers . . . have not been given a free choice, and thus liability may attach." *Id.* at 534 (quoting Restatement (Second) Torts § 402A, cmt. i).

Accordingly, liability should attach to KFC here because its foods that contain trans fat are (1) not of fair, average quality, (2) not fit for human consumption and (3) not adequately labeled to advise Dr. Hoyte and D.C. Consumers "that they were consuming dangerous trans fat products and exposing their health to serious injury." (Compl. ¶ 40.) KFC has therefore violated the implied warranty of merchantability because the Plaintiff did not, and should not, reasonably expect KFC's foods to contain trans fats.

KFC's argument that the Plaintiff's Complaint should be dismissed because it only contains conclusory allegations on this point is incorrect. As a threshold matter, a well-plead complaint may be conclusory. *Burman*, 384 F. Supp. 2d at 325 (stating that "[w]hile many well-plead complaints are conclusory, the Court need not accept

inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.") (citing *Kowal v. MCI Communications*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Moreover, contrary to KFC's assertions, Dr. Hoyte has identified the non-merchantable foods for which he is seeking redress as being KFC foods that contain trans fats, Pltf's Compl. ¶¶ 30, 31, which vitiates KFC's allegation that "there is no way to know whether [the Plaintiff] purchased several buckets of fried chicken or merely a few salads." Def's Mot. at 24. It has been and remains to the Plaintiff's position that all of KFC's foods that contain trans fats violate the implied warranty of merchantability given to consumers when they purchase KFC products. The Plaintiff's claim is supported by the allegations that (1) KFC foods cooked in partially hydrogenated oil are inherently dangerous in that they cause deadly disease to a greater extent (ounce for ounce) than any other fat, Compl. ¶¶ 21, 26; (2) "there are other oils available . . . that are completely free of trans fat and completely suitable for use in commercial food preparation," Compl. ¶ 24; and (3) KFC does not "properly warn, disclose, or even tell its customers that they are eating food items prepare with the worst oil available," Compl. ¶ 27. Accordingly, construing the facts in the light most favorable to the Plaintiff as Rule 12(b)(6) requires, it is apparent that the Plaintiff's allegations are supported by the facts in the Complaint and that KFC has violated the implied warranty of merchantability.

These facts, among others, demonstrate that the presence of trans fats in KFC's foods is undetectable, unreasonable, and unexpected by the consumer, and, therefore, KFC's trans fatty foods are not merchantable. The Plaintiff's Complaint identifies KFC's food items containing trans fats as including, but not limited to, their Extra Crispy fried chicken and their popcorn chicken dishes. (Pltf's Compl. ¶ 22.) Other fast food

restaurants that serve comparable dishes do not use partially hydrogenated oil, and thus

their chicken dishes do not contain trans fats. For example, Chick-fil-A, adhering to the

2005 FDA guidelines that recommend limiting trans fatty acids, prepares its "signature

Chick-fil-A filet, Nuggets, and Chick-n-Strips . . . in 100% non-hydrogenated peanut oil."

Chick-fil-A website, *available at* http://www.chickfila.com/Nutrition.asp. Accordingly,

no Chick-fil-A Chicken Sandwich, Chicken Deluxe Sandwich, Chargrilled Chicken

Sandwich, Chicken Club Sandwich, Chicken Salad Sandwich, Chicken-n-Strips meal, or

Chick-fil-A Nuggets meal contains any but trace amounts of trans fat. Chick-fil-A

Nutrition Information, *available at*

http://www.chickfila.com/MenuTable.asp?MenuItem=sandwich. Therefore, while it may

be "well-known that fast food in general . . . contain[s] high levels of cholesterol, fat, salt,

and sugar" *Pelman*, 237 F. Supp. 2d at 532, it is certainly not within the public's common

knowledge – and consumers do not reasonably expect – that KFC's foods contain trans

fats in particular.

Contrary to KFC's attempts to mislead the Court in couching this case as an

obesity lawsuit against the fast food industry, Plaintiff's Complaint makes clear that his

claims are moored to the fact that the dangers of trans fats are not generally known,

consumers do not expect them to be present in their food (as opposed to less dangerous

fats in general) and only a minimal amount of trans fats need to be consumed in order to

pose a danger to the consumer's health. Obesity lawsuits have attempted to impose

liability for selling food that cause the plantiffs to become overweight, thereby causing

them to incur, or face the heightened possibility of incurring, injuries associated with

being overweight. In contrast, Dr. Hoyte's claim is much more direct: trans fats cause

heart disease and possibly diabetes, regardless whether a consumer is obese or becomes obese. Even consumers who maintain a "healthy weight" are injured when they consume these hidden trans fats.

Accordingly, as the Plaintiff had a reasonable expectation that KFC's foods did not contain trans fats, KFC breached the implied warranty of merchantability with regard to its foods that are prepared in partially hydrogenated oil and therefore contain trans fats, and KFC's Motion to Dismiss should be denied.

**B.    A Physical Injury Is Not Required To Prevail On A Breach Of Warranty Claim**

In its final attempt to defeat the Plaintiff's implied warranty claim, KFC would have the Court believe that under D.C. law the Plaintiff must allege a physical injury that directly resulted from his consumption of KFC foods. Although this was true under the cases upon which KFC relies, those cases were explicitly overruled in 1990 when the District of Columbia Court of Appeals issued an *en banc* decision abandoning the requirement of a physical injury. *Williams v. Baker*, 572 A.2d 1062 (D.C. App. 1990).

Until *Williams* was issued, in order to state a claim for either breach of the implied warranty of merchantability or for negligent infliction of emotional distress, it was necessary for the claimant to demonstrate that he or she suffered a physical injury that was directly traceable to the defendant's conduct. *Harrison v. Canada Dry Corp.*, 245 A.2d 642 (D.C. 1968). The Court of Appeals held in *Williams,* however, in the context of a claim for negligent infliction of emotional distress, that if a plaintiff was in the "zone of physical danger and was caused by defendant's negligence to fear for his or her own safety" the plaintiff could recover "regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence." *Williams*, 572 A.2d at 1067.

31

Accordingly, "[t]he holding and analysis in *Williams v. Baker, supra*, make clear that the en banc court overruled the line of cases [including *Harrison v. Canada Dry*] . . . that required plaintiffs to show direct physical impact **as distinct from physical endangerment**." *Sowell v. Hyatt Corp.*, 623 A.2d 1221, 1225 (D.C. App. 1993) (internal citations omitted) (emphasis added); *Jones v. Howard*, 589 A.2d 419, 421 (D.C. App. 1991); *Williams v. United States Elevator Corp.*, 920 F.2d 1019, 1022 (D.C. Cir. 1990) (citing *Harrison v. Canada Dry* as among those cases that *Williams v. Baker* overruled).

Although *Williams* was decided in the context of a negligent infliction of emotional distress claim, its holding applies with equal force to claims of breach of the implied warranty of merchantability: "[n]egligent infliction of emotional distress is a type of negligence and there is no distinction between the law applicable to claims for negligence and breach of warranty where both are based on an 'alleged injury caused by consumption of unwholesome [food].'" *Sowell*, 623 A.2d at 1225 (quoting *Harrison*, 241 A.2d at 643).

Therefore, Dr. Hoyte having stated that he faced economic damages and was placed in a zone of "physical endangerment" by reason of his consumption of KFC foods containing trans fats, Dr. Hoyte has sufficiently alleged a cause of action which allows him to recover for KFC's breach of the implied warranty of merchantability and accordingly KFC's Motion to Dismiss should be denied.

## IV.    KFC'S SCATTERGUN ATTACKS ON PLAINTIFF'S DCCPPA CLAIM ALSO FAIL.

KFC takes three final stabs at Dr. Hoyte's claims under the DCCPPA, arguing

that (1) Dr. Hoyte lacks standing, (2) KFC's practices have no tendency to mislead, and

(3) Dr. Hoyte's claims are pre-empted by the NLEA. As Dr. Hoyte demonstrates below,

each of these arguments lacks merit and should be rejected by the Court.

### A.    Dr. Hoyte has standing.

To establish standing, Dr. Hoyte must allege that he has suffered an injury-in-fact

— an "'actual or threatened injury redressable by the court'" or a harm that is

"reasonably certain to appear in the future . . . ." *Williams v. The Purdue Pharma Co.*,

297 F. Supp. 2d 171, 177-178 (D.D.C. 2003) (quoting *Laufer v. Westminster Brokers,*

*Ltd.*, 532 A.2d 130, 135 (D.C. App. 1987)).

KFC places great reliance on this Court's decision in *Williams v. Purdue* to argue

that Dr. Hoyte must have already suffered a non-economic injury in order to properly

bring a claim before the Court. (Def.'s Mot. at 29-31.) KFC appears to argue that an

economic injury will not suffice for the purposes of standing, which is (1) not true, as the

injury merely needs to be to a legally cognizable interest, *see, e.g., Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 562 (1992) ("Of course the desire to use or observe an animal

species, even for purely esthetic purposes, is undeniably a cognizable interest for the

purposes of standing."), and (2) irrelevant, as Dr. Hoyte has alleged more than just

economic injury.

Accordingly, KFC's reliance on *Williams* is misplaced, because that court dealt

with the requirement that claimant be among the injured, and did not conclude, as KFC

asserts, that a claimant must have already suffered a non-economic damage to have

standing. (Def.'s Mot. at 30.) The *Williams* court determined that the complaint in that

case "does not plead that these defendants [*sic*; should be "plaintiffs"] were in any way

deceived — or even saw — any of that advertising. It also fails to allege any

particularized and specific injury-in-fact suffered by these plaintiffs." 297 F.Supp.2d at

177. Accordingly, the *Williams* plaintiffs lacked standing because they failed to allege

that they had personally suffered either an injury that had already occurred or one that

was "reasonably certain" to occur in the future.

Similarly, the plaintiff in *Hakki v. Zima Co.* was held not to have standing for

claims he brought, on behalf of the parents and guardians of children under the age of 21,

against certain alcoholic beverage manufacturers and importers for their alleged targeted

marketing to underage consumers. *Hakki v. Zima Co.*, 2006 WL 852126 at * 2 (D.C.

Super. 2006). The court held that the plaintiff did not have standing because he failed to

allege "(1) that Plaintiff has, or has had, a child, (2) that any such child, when underage,

purchased or consumed the product of any Defendant, or (3) that any such child ever saw

one of KFC's advertisements, much less that he or she was influenced by KFC's

marketing techniques to purchase or consume the product of any Defendant." The Court

also rejected the plaintiff's argument that a parent could be injured when the family's

funds were used by the underage consumer to purchase alcohol because the plaintiff's

"complaint [did] not allege that any child of his ever spent any funds (the child's or the

family's) on KFC's products or that he or she did so in response to KFC's

advertisements." *Id.*

In this case, however, Dr. Hoyte has pled that he personally bought and consumed

KFC foods cooked in partially hydrogenated oil and containing trans fats, and that he was

personally deceived by KFC in making those purchases. In his Complaint, Dr. Hoyte alleges injury-in-fact multiple times:

- "Dr. Hoyte and all other D.C. Consumers purchased food items at KFC locations in the District of Columbia, which were prepared in oil containing trans fat, and were thereby injured and subjected to irreparable harm." Complaint ¶ 3.

- "Dr. Hoyte and the Class seek actual damages for their economic injuries caused by these violations in an amount to be determined at trial." Complaint ¶ 47.

- "As a direct and proximate result of KFC's marketing and sale of food products prepared with partially hydrogenated oil, Dr. Hoyte and D.C. Consumers were exposed to unknown amounts of unhealthy trans fats and have suffered or will suffer adverse health effects from said consumption." Complaint ¶ 62.

As the *Williams* opinion noted, the plaintiffs there were not suing over a product "with a defect that is reasonably certain to appear in the future." 297 F.Supp.2d at 178. By contrast, here Dr. Hoyte's claims arise out of a defect that is widely recognized to create health problems in the future. The injury is at least reasonably certain to occur, especially when considering the facts in the light most favorable to Dr. Hoyte on a motion to dismiss, which is sufficient to confer standing. Accordingly, at the pleading stage, Dr. Hoyte has properly and adequately alleged injury-in-fact, and the Defendant's argument should be denied.

**B.**    **KFC's practices result in actual consumer deception.**

KFC bases its argument against Dr. Hoyte's claim that he and others were misled by KFC's failure to disclose that it uses trans fats in cooking on the two allegations, that (1) "many types of fast food are commonly known to be high in fat" and (2) there was no law expressly requiring restaurants to disclose trans fat content and "it is common knowledge that they generally did not do so." (Def.'s Mot. at 31.)

As to the first point, it is indeed likely that people know that fried chicken has a lot of fat. But KFC confuses the issue — this lawsuit is not about fats *qua* fats, or the effect of fats on weight gain or obesity. Instead, this lawsuit is about trans fat's promotion of heart disease and, possibly, other diseases, even in small quantities. Thus, it is irrelevant whether or not consumers know that fast food may have a high fat content overall; instead, the issue is whether consumers know about the trans fat in KFC's products.

As to the second point, while it is certainly true that there is no law that expressly requires disclosure of trans fat by restaurants, the DCCPPA covers this areaby requiring the disclosure of ***material facts*** — it applies to all manner of companies who do business with the public. If the absence of a particular and specific regulation were a defense to this claim, then this provision of the statute would be surplusage and meaningless.

KFC offers no substantiation for its allegation that "it is common knowledge" that restaurants were not expressly required to disclose trans fat content. KFC is again invoking its novel "common knowledge" defense, discussed above.

36

**C.**      **Dr. Hoyte's DCCPPA claims are not pre-empted.**

KFC's parting shot is a claim that the NLEA, a federal law, pre-empts any state

law that would require nutrition labeling by restaurants such as KFC; therefore KFC

argues that this Court should not grant Dr. Hoyte injunctive relief in the form of

disclosure to KFC's consumers that its foods contain trans fat products because that

would conflict with the NLEA's policy against state regulation of nutrition labeling. This

argument is wrong for several reasons.

First, were the District of Columbia to require more stringent labeling

requirements than those imposed by federal law, it would be within its power to regulate

the health and safety of its citizens to do so. Although state law that conflicts with federal

law is effectively null and void, "the historic police powers of the States [are] not to be

superseded by . . . Federal Act unless that [is] the clear and manifest purpose of

Congress." *Pelman*, 237 F. Supp. 2d at 525 (quoting *Cipollone v. Liggett Group, Inc.*,

505 U.S. 504, 516 (1992) (brackets in original) (quoting *Rice v. Santa Fe Elevator Corp.*,

331 U.S. 218, 230 (1947)). Contrary to KFC's incorrect and incomplete reading of the

NLEA, that statute clearly does not pre-empt the states from imposing stricter nutrition

labeling requirements.

Specifically, KFC cites to §§ 343(q)(5)(A)(i) and (ii), and 343(r)(5)(B) of the

NLEA to support its argument that federal law exempts restaurants from nutrition

labeling requirements, and requires that states do the same. (Def.'s Mot. at 33.)

While it is true that these provisions of the NLEA do exempt restaurants in certain

circumstances from certain nutrition labeling requirements, the NLEA's pre-emptive

provision, 21 U.S.C. § 343-1, expressly cancels out KFC's argument that these provisions

bar any District labeling law. With regard to § 343(q)(5)(A), subsection (a)(4) of the pre-

emptive provision expressly permits states to require labeling of food that is otherwise

exempt under subsection (i) or (ii) of 21 U.S.C. § 343(q)(5)(A), the very subsections

upon which KFC relies. This has already been made clear by KFC's own precedent:

> Section 343-1, the NLEA's pre-emptive provision, provides that no
> state may require nutrition labeling for food in interstate commerce
> that is not identical to that prescribed by the NLEA. 21 U.S.C. §
> 343-1(a)(4); see also Morelli v. Weider Nutrition Group, Inc., 275
> A.D.2d 607, 607, 712 N.Y.S.2d 551 (1st Dep't 2000). This
> provision would seem to support McDonalds' argument. However,
> subsection (4) of the pre-emptive provision specifically permits
> states to require nutrition labeling of food that is exempt under
> subclause (i) or (ii) of 21 U.S.C. § 343(q)(5)(A). 21 U.S.C. § 343-
> 1(a)(4). As noted above, § 343(q)(5)(A)(i) is the very provision on
> which McDonalds relies to state that it has "complied" with federal
> regulations and that the State of New York cannot make it do
> anything more.
>
> Therefore, § 343-1(a)(4) does not expressly bar nutrition labeling
> on restaurant foods either directly or, as plaintiffs seek to do in this
> action based on a New York state statute, indirectly. A finding that
> a lack of nutritional labeling on McDonalds' products violates §§
> 349 and 350 therefore is explicitly not pre-empted by the NLEA.
> In fact, in discussing its rules and regulations implementing the
> NLEA, the Food and Drug Administration recognized that states
> could protect their consumers in this manner. FDA, Food Labeling;
> General Requirements for Health Claims for Food, 58 FR 2478,
> 2517, 1993 WL 1547 (1993) ("States remain free, however, to
> ensure under their own consumer protection laws that menus do
> not provide false or misleading information.").

*Pelman*, 237 F.Supp.2d at 526.

In addition, with regard to the second part of the statute on which KFC relies, 21

U.S.C. § 343(r)(5)(B), the NLEA's pre-emptive provision says that "no State or political

subdivision of a State may directly or indirectly establish under any authority or continue

in effect as to any food in interstate commerce— . . . (5) any requirement respecting any

claim of the type described in section 403(r)(1) [21 U.S.C. § 343(r)(1)] made in the label

or labeling of food that is not identical to the requirement of section 403(r) [§ 343(r)], except a requirement respecting a claim made in the label or labeling of food which is exempt under section 403(r)(5)(B) [343(r)(5)(B)]." 21 U.S.C. § 343-1(a)(5).

Section 403(r)(5)(B) [21 U.S.C. 343(r)(5)(B)] says that some of those requirements "do not apply to food which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments."

Thus, the pre-emption language says that a state can't set different standards than set by the NLEA, *except as to food sold in restaurants*.

In other words, rather than support pre-emption, the federal law expressly preserves the rights of the states to act. As KFC admits, the District has not yet done so with regard to nutritional labeling disclosures (Def.'s Mot. at 14-15), and therefore a decision by this Court to grant injunctive relief would not conflict with any federal or state law. and accordingly KFC's Motion to Dismiss on pre-emption grounds should be denied.

## **CONCLUSION**

Therefore, for the reasons set forth above, and for those to be set out more

particularly in such hearing as the Court may assign to be held on this matter, Plaintiff

respectfully requests that this Court deny Defendant's Motion to Dismiss.

Dated: September 12, 2006                   Respectfully Submitted,


                                            HEIDEMAN NUDELMAN
                                             & KALIK, P.C.
                                            1146 19th Street, N.W., Fifth Floor
                                            Washington, DC 20036
                                            Telephone: 202-463-1818
                                            Facsimile: 202-463-2999

                                            By: _/s/ Richard D. Heideman_
                                                Richard D. Heideman (No. 377462)
                                                Noel J. Nudelman (No. 449969)
                                                Tracy Reichman Kalik (No. 462055)


                                            CENTER FOR SCIENCE IN THE
                                            PUBLIC INTEREST
                                            Stephen Gardner, Director of Litigation
                                            (D.C. Bar application pending)
                                            The Meadows Building
                                            5646 Milton Street, Suite 211
                                            Dallas, Texas 75206
                                            Telephone: 214-827-2774
                                            Facsimile: 214-827-2787

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of September, a copy of the forgoing was

served via the ECF filing system of the United States District Court for the District of

Columbia on counsel for the Defendant:

Roger E. Podesta
Mark P. Goodman
Erich O. Grosz
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Ana Fernandez Johnson
Debevoise & Plimpton, LLP
555 12th Street, NW
Suite 1100E
Washington, DC 20004

*/s/Tracy Reichman Kalik*
Tracy Reichman Kalik