IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR HOYTE, M.D., on behalf of himself and all     )
others similarly situated, and in the interests of the general     )
public,     )
                                                                            )     Civil Action No.  06-1127 (JR)
                                        Plaintiff,     )
                                                                            )
        v.     )
                                                                            )
YUM! BRANDS, INC. d/b/a KFC,     )
                                                                            )
                                        Defendant.     )

REPLY STATEMENT OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF YUM! BRANDS, INC.'S MOTION TO DISMISS

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, N.Y. 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

555 12th St., N.W.
Suite 1100E
Washington, D.C. 20004
Tel: (202) 383-8000
Fax: (202) 383-8118

Attorneys for Defendant Yum! Brands, Inc.

Dated: September 26, 2006

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................1

I.  KFC Had No Duty To Affirmatively Disclose The Trans Fat Content Of Its Food. ..........1
    A.  The DCCPPA Imposed No Duty To Disclose......................................................2
    B.  The Law Of Implied Warranty Imposed No Duty To Disclose.............................4

II. Plaintiff's Negligent Misrepresentation Claim Is Inadequately Pled And Fails To
    State A Claim. ..............................................................................................................7
    A.  A Claim Of Negligent Misrepresentation Must Be Pled With Particularity. ..........7
    B.  Plaintiff's Negligent Misrepresentation Claim Lacks The Necessary
        Particularity.............................................................................................................9
    C.  Even If Plaintiff's Claim Had Been Properly Pled, The Statements
        Allegedly Made By KFC Are Not Actionable.......................................................10

III. Plaintiff's Implied Warranty Claim Should Be Dismissed For Multiple Additional
     Reasons. .................................................................................................................13
    A.  Plaintiff Still Refuses To Identify The Products About Which He
        Complains. ..........................................................................................................14
    B.  Plaintiff's Allegations Establish That Whatever Food He Ordered From
        KFC Met The Standard Of Merchantability. ......................................................14
    C.  In His Claim For Breach Of Implied Warranty, Plaintiff Fails To Allege
        That He Sustained Any Legally Cognizable Injury..............................................17

IV. Plaintiff's DCCPPA Claim Should Be Dismissed For Three Additional Reasons. ..........19
    A.  Plaintiff Has Not Alleged Any Injury-In-Fact And Therefore Lacks
        Standing. ............................................................................................................19
    B.  Plaintiff Offers No Plausible Theory Of How KFC's Alleged Non-
        Disclosure "Tend[ed] To Mislead" Him Into Believing That KFC Food
        Was Trans Fat Free. ...........................................................................................21
    C.  Plaintiff's Claims For Prospective Injunctive Relief Are Subject To
        Express And Implied Preemption By Federal Laws That Plaintiff Does
        Not Even Address. ..............................................................................................22

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

AIG Global Sec. Lending Corp. v. Banc of America Sec. LLC, No. 01 Civ. 11448, 2003
WL 1738484 (S.D.N.Y. Mar. 31, 2003) .................................................................8

Anderson v. USAA Casualty Insurance Co., 221 F.R.D. 250 (D.D.C. 2004) ...........................7, 9

Brown v. U.S., 271 F. Supp. 2d 225 (D.D.C. 2003) .......................................................13

Burlington Insurance Co. v. Okie Dokie, Inc., 329 F. Supp. 2d 45 (D.D.C. 2004).......................8

Burman v. Phoenix Worldwide Industries, Inc., 384 F. Supp. 2d 316 (D.D.C. 2005) ...............8, 9

Cephas v. MVM, Inc., 403 F. Supp. 2d 17 (D.D.C. 2005) ...............................................13

Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., 911 F.2d 242 (9th
Cir. 1990) .........................................................................................................11

Evans v. Taco Bell Corp., No. 04-CV-103, 2005 WL 2333841 (D.N.H. Sept. 23, 2005) ...........11

Geier v. American Honda Motor Co., 529 U.S. 861 (2000).............................................24

Glen Holly Entertainment Inc. v. Tektronix Inc., 352 F.3d 367 (9th Cir. 2003)..........................12

In re U.S. Office Products Co. Sec. Litigation, 251 F. Supp. 2d 58 (D.D.C. 2003) .......................7

Krooth & Altman v. N. America Life Assurance Co., 134 F. Supp. 2d 96 (D.D.C. 2001)...........13

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153 (S.D.N.Y.
Apr. 10, 2003) ...................................................................................................7

Mills v. Giant of Maryland, LLC, No. 05-02211, -- F. Supp. 2d --, 2006 WL 2165756
(D.D.C. Aug. 2, 2006).........................................................................................4

Next Century Communications Corp. v. Ellis, 318 F.3d 1023 (11th Cir. 2003) ..........................11

Pelman v. McDonald's Corp., 237 F. Supp. 2d 512 (S.D.N.Y. 2003) ...................................1, 4, 5,
6, 22, 23

Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002)...........................................20

Williams v. Gerber Products Co., 439 F. Supp. 2d 1112 (S.D. Cal. 2006) ..................................11

Table of Authorities
(Continued)

Page

Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003) ..............................19, 20, 21

**STATE CASES**

Brennan v. Shepherd Park Pharmacy, 138 A.2d 494 (D.C. 1958) ................................................15

Brown v. McDonald's Corp., 101 Ohio App. 3d 294 (Ohio Ct. App. 1995) ..................................4

Edwards v. Hop Sin, Inc., 140 S.W.3d 13 (Ky. Ct. App. 2003) ......................................................4

Hagedorn v. Taggart, 114 A.2d 430 (D.C. App. 1955) ..................................................................11

Hakki v. Zima Co., No. 03-9183, 2006 WL. 852126 (D.C. Super. Ct. 2006)........................19, 21

Hochberg v. O'Donnell's Restaurant, Inc., 272 A.2d 846 (D.C. 1971)....................................15, 16

Jones v. Howard University, Inc., 589 A.2d 419 (D.C. 1991)........................................................18

Rosenberg v. Howle, 56 A.2d 709 (D.C. App. 1948)......................................................................11

Sowell v. Hyatt Corp., 623 A.2d 1221 (D.C. 1993) .................................................................16, 18

Williams v. Baker, 572 A.2d 1062 (D.C. 1990) .............................................................................18

**FEDERAL STATUTES AND LEGISLATIVE MATERIALS**

21 C.F.R. § 101.9 ...........................................................................................................................23

21 C.F.R. § 101.10 ....................................................................................................................2, 23

21 C.F.R. § 101.13 .........................................................................................................................22

21 C.F.R. § 101.45 .........................................................................................................................23

21 U.S.C. § 343.............................................................................................................2, 22, 23, 24

21 U.S.C. § 343-1 ...............................................................................................................22, 23, 24

Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and
   Health Claims, 68 Fed. Reg. 41434, 41483 (Jul. 11, 2003) ........................................................7

Table of Authorities
(Continued)

Page

**STATE STATUTES**

D.C. Code § 28:2-314 ...........................................................................................................15

D.C. Code § 28-3904 .........................................................................................................2, 21

D.C. Mun. Regs. title 25, § 1102 .......................................................................................2, 21

D.C. Mun. Regs. title 25, § 9901 .......................................................................................2, 21

U.C.C. § 2-314 ................................................................................................................15, 16

REPLY STATEMENT OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF YUM! BRANDS, INC.'S MOTION TO DISMISS

Plaintiff's opposition brief only serves to confirm that he has failed to state a claim upon which relief can be granted under either the D.C. Consumer Protection Procedures Act ("DCCPPA") or the law of implied warranty of merchantability, and that his claim of negligent misrepresentation, in addition to failing to state a cause of action, has been inadequately pled.[1] While numerous deficiencies in the Complaint warrant dismissal, most fundamental are that KFC had no legal duty to make affirmative disclosures concerning the trans fat content of its food and that the two KFC statements alleged to be misrepresentations are non-actionable (one as puffery, the other as a broad generalization that does not even mention KFC food). These failings encompass all three of plaintiff's purported causes of action and cannot be cured by repleading. Accordingly, KFC's motion to dismiss should be granted and the Complaint should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

ARGUMENT

I.    KFC Had No Duty To Affirmatively Disclose The Trans Fat Content Of Its Food.

Plaintiff alleges that KFC breached its implied warranty of merchantability and violated the DCCPPA by not affirmatively informing him, at the point of purchase, of the trans fat content of the menu items that he bought. But neither the DCCPPA nor the law of implied warranty imposed any duty on KFC to make such disclosures. The existence and nature of a

---

[1]    Oddly, plaintiff insists that KFC seeks to "mislead the Court in couching this case as an obesity lawsuit against the fast food industry." Pl. Mem. at 6. That is simply incorrect. The word "obesity" appears precisely once in KFC's opening brief – in a citation to a document published by the U.S. Department of Health and Human Services, HHS Unveils FDA Strategy to Help Reduce Obesity (March 12, 2004), see KFC Mem. at 2 n.1 – and only one of the many cases cited in KFC's brief, Pelman v. McDonald's Corp., 237 F. Supp. 2d 512 (S.D.N.Y. 2003), happens to involve an obesity claim.

duty, as plaintiff does not dispute and must concede, are matters of law to be determined by the

Court, and therefore appropriate for resolution on a motion to dismiss.  KFC Mem. at 10.

A.      The DCCPPA Imposed No Duty To Disclose.

In its opening brief, KFC demonstrated that the general antifraud provision of the

DCCPPA, D.C. Code § 28-3904(f), cannot reasonably be construed to require restaurants such as

KFC to inform consumers of the ingredients or nutrients used in their menu items in

contravention of far more specific federal and District statutes that expressly exempt restaurants

from any such duty.  In support of its position, KFC relied upon the following statutory and

regulatory history:

- In enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"), Congress specifically considered the question of when food ingredients and nutrients must be disclosed, and adopted a law requiring such disclosure for packaged foods but expressly exempting restaurant food.[2]  21 U.S.C. § 343(q)(5)(A)(i) ([These requirements shall not apply to food] "which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments.").

- Congress did leave states free to impose additional requirements on restaurants. However, the D.C. Council chose not to avail itself of that option and instead enacted legislation adopting as District law much of the federal nutritional labeling regime, including the express exemption for restaurants.  See D.C. Mun. Regs. title 25, §§ 1102, 9901.

- Since enacting that legislation, the D.C. Council twice has considered and chosen not to pass legislation that would have imposed on restaurants the same duty of disclosure that plaintiff now asks this Court to impose on KFC.  See Menu Education and Labeling Act of 2005, B16-495, D.C. Council (2005); Nutritional Information at Restaurants Act of 2003, B15-387, D.C. Council (2003).

---

[2]     Even under the new FDA trans fat regulations, which became effective January 1, 2006, restaurants are not required to disclose the trans fat content of their food unless the labeling, if any, contains a specific claim regarding the health or nutrient content of the food.  See 21 C.F.R. § 101.10 (2006); KFC Mem. at 14-15.  As explained infra and in KFC's opening brief, plaintiff's claims for prospective injunctive relief are preempted by the new regulations.

2

In his opposition, plaintiff nowhere denies that these federal and District statutes expressly exempt KFC from any obligation to make point-of-purchase disclosures of the trans fat content of its menu items.  Instead, plaintiff attempts to characterize these statutes as demonstrating nothing more than an "absence of regulation" or a "failure to regulate."  Pl. Mem. at 13-14.  But this is surely a misinterpretation of the statutes.  Both Congress and the D.C. Council expressly considered the question of the extent to which sellers of food should be required to disclose ingredients (implicitly recognizing that neither statutory nor common law already imposed such a duty) and made the affirmative policy judgment that such disclosures should be required in the case of packaged food but not in the case of restaurant food.  In these circumstances, the Court should apply the established principle of statutory construction that the more specific statute governs the general.  KFC Mem. at 16.  Here the more general law – the DCCPPA's "material fact" provision – must yield to the more specific laws governing food labeling, and plaintiff's effort to impose a duty to disclose the ingredients used in restaurant food in the face of clear federal and District law to the contrary must be rejected.

Furthermore, if the DCCPPA were to be construed in the manner advocated by plaintiff, the consequences for restaurants and other food suppliers in the District would be unduly harsh and fundamentally unfair.  Restaurants that relied on the federal and District laws expressly exempting them from food labeling requirements, and that consequently did not notify customers of the trans fat content of their food, would effectively be told that they were wrong to rely on those clear-cut exemptions – and would find themselves exposed to potentially massive monetary damages, including the possibility of punitive damages, attorney's fees and injunctive relief.  Even suppliers of packaged food – who, prior to January 1, 2006, were not required to

identify trans fat content – would suddenly face liability for not having disclosed trans fat content at a time when they were not required to do so.

B.       The Law Of Implied Warranty Imposed No Duty To Disclose.

Plaintiff claims only economic harm and expressly disclaims any personal injury, but the law of implied warranty never has imposed a duty on restaurants to disclose ingredients or nutrients in order to avert mere economic harm to the consumer.  Such a duty has been imposed only in personal injury cases – and even then, only when an ingredient or substance in the food, generally an allergen or toxin, creates an immediate danger of serious harm and causes such harm.  See, e.g., Edwards v. Hop Sin, Inc., 140 S.W.3d 13 (Ky. Ct. App. 2003) (bacterium found in raw oysters); Brown v. McDonald's Corp., 101 Ohio App. 3d 294 (Ohio Ct. App. 1995) (seaweed-derived ingredient in hamburger); cf. Mills v. Giant of Maryland, LLC, No. 05-02211, -- F. Supp. 2d --, 2006 WL 2165756 at *5 (D.D.C. Aug. 2, 2006) (milk suppliers had no duty to warn of possible lactose intolerance in part because dangers consist of nothing more than "gastrointestinal discomfort").

Moreover, in its opening brief, KFC observed that

> diligent research has revealed not a single case in the District or
> elsewhere in which a court has recognized a common-law duty on
> restaurateurs or food suppliers to disclose ingredients or nutrients
> that do not cause any immediate harm but pose a potential health
> risk, if at all, only if consumed in significant quantities over an
> extended period of time.

KFC Mem. at 10.  Plaintiff's own research has apparently produced the same result.  While he alludes disparagingly to KFC's research conclusions, Pl. Mem. at 9, he cites nary a single case to the contrary.  Indeed, the only case cited by plaintiff on this issue is Pelman v. McDonald's Corp., 237 F. Supp. 2d 512 (S.D.N.Y. 2003), a personal injury case brought by plaintiffs who

consumed fast food but, unlike Dr. Hoyte, allegedly suffered specific adverse health effects including diabetes, coronary heart disease and high blood pressure.  Id. at 519.  Moreover, Pelman dismissed the plaintiffs' claims, finding that the defendant, McDonald's, owed them no duty to warn them of the potential adverse health effects of consumption of fast food (including any potential increased risk of heart disease).  Id. at 531-33.

Perhaps recognizing the obstacles posed by implied warranty case law, plaintiff advances the contention that trans fat is inherently harmful in any quantity, and therefore distinguishable from products that are only potentially dangerous when consumed in excessive quantity (for example, the fast food that formed the basis of the claims that the court rejected in Pelman).  Pl. Mem. at 6.  But this argument fails for at least three reasons to salvage plaintiff's claim.  First, it is a naked conclusion which not only flies in the face of common sense but is unsupported by any of the medical authorities referenced in the Complaint, none of which validates plaintiff's extreme position that a single meal of fried chicken or French fries or cake or cookies or margarine containing trans fat will lead to significant adverse health consequences.[3]  Second, even if the proposition were generally true, it cannot assist this plaintiff, who alleges no personal injuries.  He does not claim to have developed coronary heart disease, high blood pressure or any other adverse health consequence as a result of eating KFC food.  Finally, the proposition that trans fat is inherently harmful in any quantity and that the consumption of even a single meal of food containing trans fat can give rise to a cause of action for money damages sweeps far too

---

[3]   See U.S. Department of Health and Human Services, Dietary Guidelines for Americans 2005, Ch. 6 ("2005 Dietary Guidelines") (KFC Ex. 1); National Academy of Sciences / Institute of Medicine Letter Report on Dietary Reference Intakes for Trans Fatty Acids (2002), available at http://www.iom.edu/CMS/5410.aspx ("IOM Report") (KFC Ex. 6); U.S. Food and Drug Administration, Nutrition Subcommittee of the Food Advisory Committee, Summary Minutes of Nutrition Subcommittee, April 27 & 28, 2004, available at http://www.fda.gov/OHRMS/DOCKETS/ac/04/minutes/2004-4035m1-summary.pdf (KFC Ex. 7).

broadly.  As the FDA has found, trans fat is widespread in the American diet and is present in

many common food items, including milk, butter, meat, crackers, potato chips, popcorn and

bread.  See 2005 Dietary Guidelines, Ch. 6 (KFC Ex. 1) at Tables 10 and 11.  If plaintiff's

reasoning were accepted, anyone who ever consumed a meal containing any one of these foods

or hundreds of others without realizing that they contained trans fat would be entitled to bring an

action for money damages even in the absence of any personal injury.  Moreover, the

extraordinarily far-reaching principle advocated by plaintiff cannot be limited to trans fat alone.

Another plaintiff, without alleging any personal injury, could bring a claim with regard to

saturated fat, cholesterol, sugar, salt or virtually any other ingredient or nutrient associated with

potential health risks when consumed in sufficiently large quantity.  As KFC observed in its

opening brief, there is no legal or common sense justification for extending the concept of breach

of implied warranty to this extreme.  KFC Mem. at 13, 17.  That is especially true in this case,

where plaintiff's claim is based on the D.C. implied warranty statute, and other more specific

federal and D.C. statutes expressly exempt restaurants from any duty to disclose the trans fat

content of their food.[4]  If trans fat is as dangerous as plaintiff asserts in his opposition brief, that

---

[4]     Plaintiff virtually ignores KFC's argument that implied warranty law never has recognized
the duty that plaintiff seeks to impose on KFC, and instead chooses to focus on a subsidiary
point made by KFC: that the presence of high levels of fat in fast food and the potential
health risks of consuming fat in excessive quantities are commonly known.  That point is not
necessary to reach the conclusion that KFC had no duty to identify the trans fat content of its
food, though it provides further support for the conclusion.  This Court may take judicial
notice, as the court in Pelman did, that "[i]t is well-known that fast food in general . . .
contain[s] high levels of . . . fat . . . and that such attributes are bad for one."  237 F.Supp.2d
at 532.  Plaintiff apparently does not dispute this point, as he concedes that "it is indeed
likely that people know that fried chicken has a lot of fat" and asserts that consumption of
trans fat "is widely recognized to create health problems in the future."  Pl. Mem. at 36, 35.
Although plaintiff seeks to distinguish trans fat from fat generally by arguing that trans fat is
inherently harmful in any quantity, this distinction is not supportable.  As the FDA and
plaintiff's own sources recognize, both trans fat and saturated fat are associated with the
same potential health risk: an increased risk of heart disease.  See 2005 Dietary Guidelines,

is a matter to be addressed through the legislative and regulatory processes, not by an action for money damages absent any personal injury.

II.     Plaintiff's Negligent Misrepresentation Claim Is Inadequately Pled And Fails To State A Claim.

 A.  A Claim Of Negligent Misrepresentation Must Be Pled With Particularity.

 A claim of negligent misrepresentation must be pled with particularity, a standard that plaintiff's bare-bones allegations of misrepresentation cannot meet.  See, e.g., Anderson v. USAA Casualty Ins. Co., 221 F.R.D. 250, 254 (D.D.C. 2004) ("[A] failure to satisfy the pleading requirements of Rule 9(b) would be fatal to the plaintiff's claim of negligent misrepresentation."); In re U.S. Office Products Co. Sec. Litig., 251 F. Supp. 2d 58, 74 & n.9 (D.D.C. 2003) (concluding that plaintiff "must adequately allege all of the required elements" and that "[s]imilar to the requirements for pleading fraud claims, failure to meet the pleading requirements of Rule 9(b) may also be fatal to plaintiffs' claims of negligent misrepresentation") (emphasis in original) (internal citation and quotation marks omitted); see also, e.g., Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153 at *4 (S.D.N.Y. Apr. 10,

---

Ch. 6 (KFC Ex. 1) at 1; U.S. Food and Drug Administration, Questions and Answers About Trans Fat Nutrition Labeling (updated Jan. 1, 2006) ("FDA Trans Fat Q&A") (KFC Ex. 4) at 3; IOM Report (KFC Ex. 6) at 14.  Plaintiff may contend that trans fat increases the risk more on a per-gram basis, but it is undisputable that the average American consumes far more saturated fat than trans fat.  FDA Trans Fat Q&A (KFC Ex. 4) at 4; Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims, and Health Claims, 68 Fed. Reg. 41434, 41483 (Jul. 11, 2003) (to be codified at 21 C.F.R. pt. 101).  What matters, for purposes of this lawsuit, is that with regard to their potential to cause adverse effects on health, trans fat and saturated fat differ, if at all, only in degree.  As Pelman recognized, consumers already know that excessive consumption of fats can increase the risk of heart disease.  The law does not require consumers to be chemists or food hygienists, parsing trans fat from saturated fat, or dextrose from sucrose: it is sufficient, for purposes of the Restatement's principles, that consumers know that fast food often contains high levels of fat and that excessive consumption of fat is associated with an increased risk of heart disease.

2003) ("Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard"); <u>AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC</u>, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) ("A claim for negligent misrepresentation must also satisfy the requirements of Rule 9(b) . . .").

Plaintiff incorrectly contends that two recent District Court decisions, <u>Burlington Insurance Co. v. Okie Dokie, Inc.</u>, 329 F. Supp. 2d 45 (D.D.C. 2004), and <u>Burman v. Phoenix Worldwide Industries, Inc.</u>, 384 F. Supp. 2d 316 (D.D.C. 2005), have lowered the applicable pleading standard from particularity, under Rule 9(b), to mere notice pleading, under Rule 8. However, neither decision made any attempt to analyze Rule 9(b) or to distinguish the holdings of <u>Anderson</u> and <u>U.S. Office Products</u> applying Rule 9(b) to claims of negligent misrepresentation.  In <u>Burlington</u>, the principal pleading issue was whether the plaintiff insurer, in order to plead reasonable reliance on a broker's alleged misrepresentations, had to specify that the reliance was "objectively" reasonable.  The court held that it was not necessary to do so, because "[a]n insurer's reliance on statements made in an insurance application is generally recognized as objectively reasonable . . . ." 329 F. Supp. 2d at 50.  Although the court also observed that it "is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint," <u>id</u>., that comment is mere dicta, as the plaintiff actually <u>had</u> pled in express terms that it "reasonably relied" on the alleged misrepresentations.  <u>Id</u>. at 47, 49-50.  <u>Burman</u> did not even reach the issue of pleading negligent misrepresentation with particularity.  After finding that the allegations in support of plaintiffs' securities fraud claims satisfied the heightened pleading requirements of the Private Securities Litigation Reform Act and Rule 9(b), the court recognized that plaintiffs' negligent misrepresentation claim was predicated on exactly the same allegations and, hence, also was adequately pled.  384 F.Supp.2d at 336-37.  Therefore, the court

did not address whether Rule 9(b) also applied to the negligent misrepresentation claim, and

observed in dicta that the defendants had not even argued that the Rule 9(b) standard should be

applied.  Id. at 337.

B.    Plaintiff's Negligent Misrepresentation Claim Lacks The Necessary Particularity.

Plaintiff admits that if the Rule 9(b) particularity standard applies, he must plead the

"who, what, when, where, and how" of the alleged misrepresentations.  Anderson, 221 F.R.D. at

253; see Pl. Mem. at 16-17.  Yet the Complaint falls woefully short of providing that necessary

information.  The sum total of plaintiff's factual allegations about KFC's alleged

misrepresentations appears in two paragraphs of the Complaint: paragraph 28 alleges that "KFC

has deceptively advertised and misrepresented to its customers and consumers, both in its stores

and on its website, that KFC gives consumers 'the best food' and that KFC food products could

be consumed as part of a nutritionally healthy lifestyle . . . ," and paragraph 57 alleges that

"KFC, knowing that its food products contained trans fats, represented to Dr. Hoyte and D.C.

Consumers that it was providing the 'best food' and that its food could be consumed as part of a

healthy lifestyle."  Compl. ¶¶ 28, 57.  Contrary to plaintiff's assertion, these skeletal allegations

do not meet the threshold of pleading with particularity:

- The Complaint simply lumps together the two alleged misrepresentations and makes no effort to offer facts specific to either statement.  It is therefore impossible to tell whether or not both statements were made at the same time, in the same place, or by the same mode of communication.

- Plaintiff inadequately identifies the statements themselves, quoting only three words ('the best food') and instead offering his own characterization of the remainder of the two statements.

- Plaintiff refuses to specify when the statements were made.  According to plaintiff, it is sufficient to allege that the statements were made "before he purchased KFC foods containing trans fats . . . ."  Pl. Mem. at 18 (emphasis added).  But this allegation reveals nothing: it says only that the statements were

made before plaintiff relied upon them, without which the claim would be utterly incoherent.  Moreover, if such a vague allegation is adequate, it would be enough for plaintiff to say that the statements were made "sometime in the past."  Rule 9(b) requires much more.

- Plaintiff alleges that the statements were made "in [KFC's] stores and on its website," but does not say which stores.

- The Complaint inadequately alleges how the statements in KFC's stores were made: it does not specify whether the statements were oral or in writing, nor what form any writing took, nor what the actual words of the alleged misrepresentation were.

Accordingly, plaintiff's negligent misrepresentation claim should be dismissed pursuant to Rule 9(b) for failure to plead with particularity.

C.       Even If Plaintiff's Claim Had Been Properly Pled, The Statements Allegedly Made By KFC Are Not Actionable.

Pleading deficiencies aside, plaintiff's more fundamental problem is that the statements allegedly made by KFC cannot, as a matter of law, give rise to a claim for negligent misrepresentation.

The assertion by KFC that it provides the "best food and dining experience in the quick service restaurant business" is a textbook instance of puffery, a category of marketing hype that plaintiff concedes is not actionable.  Plaintiff does not even attempt to address or distinguish any of the numerous authorities, including six cited by KFC, that have defined non-actionable puffery to include claims that one's product is "the best" or "of the highest quality."  See KFC Mem. at 21-22; Pl. Mem. at 24-26.  In particular, plaintiff completely ignores the recent New Hampshire federal court ruling that a statement identical, word for word, to that allegedly made

by KFC constitutes puffery and is not actionable.  Evans v. Taco Bell Corp., No. 04-CV-103, 2005 WL 2333841, at *12 n.19 (D.N.H. Sept. 23, 2005).[5]

Instead, plaintiff resorts to arguing that this Court is inadequately equipped, given the record before it, to determine on a motion to dismiss whether the statement that KFC provides the "best food" constitutes non-actionable puffery.  Whether that determination is to be made on a motion to dismiss or a motion for summary judgment depends on the particular statement at issue.  Where, as here, it is clear on the face of the statement that it constitutes puffery, it is entirely appropriate for the Court to make that determination on a motion to dismiss, as other courts have done.  Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reasons why they should not do so."); see also, e.g., Next Century Communications Corp. v. Ellis, 318 F.3d 1023, 1028 (11th Cir. 2003) (holding that district court properly determined on motion to dismiss that CEO's claim of "strong performance" was mere puffery); Williams v. Gerber Prods. Co., 439 F. Supp. 2d 1112 (S.D. Cal. 2006) (granting motion to dismiss with prejudice).

Moreover, while plaintiff seeks an opportunity to conduct fact discovery concerning KFC's assertion that it provides the "best food," such discovery would be entirely a fishing

---

[5]    The only supposedly contrary authorities plaintiff does cite, Hagedorn v. Taggart, 114 A.2d 430 (D.C. 1955), and Rosenberg v. Howle, 56 A.2d 709 (D.C. 1948), are easily distinguishable.  Both cases involved affirmative representations of fact capable of being proved or disproved based on the surrounding circumstances: in Hagedorn, a face-to-face representation by a salesperson about the suitability of a particular hearing aid, a specialized product, for the plaintiff's hearing deficiency, and in Rosenberg, a representation that a building had been fully converted to office use.  Here, by contrast, KFC's assertion that it provides the "best food and dining experience in the quick service restaurant business" is a purely subjective statement of opinion – true puffing – that does not depend in any way on the circumstances.

expedition, as plaintiff does not (and cannot) explain how any additional information about the statement could alter the conclusion that it is mere puffery.  Even if one were to consider the circumstances surrounding the assertion, those circumstances only support the conclusion that KFC's statement was puffery: it is a general statement about all of KFC's food as well as the dining experience in its entirety, with no reference to trans fat or any other particular aspect of KFC's food, made as part of the general introduction to the company website with detailed ingredient lists and nutritional data a mere click away via clearly marked links.

Plaintiff also never explains what is actionable about the other statement challenged in the Complaint: KFC's alleged assertion that "its food could be consumed as part of a healthy lifestyle."  Compl. ¶ 57.  As discussed in KFC's opening brief, the statement on which plaintiff's allegation appears to be based – "We believe eating sensibly, combined with appropriate exercise, is the best solution for a healthy lifestyle," KFC Website (KFC Ex. 10) – does not even refer to KFC food and merely repeats a broad generalization consistent with federal health recommendations.  KFC Mem. at 22-23; cf. Glen Holly Entertainment Inc. v. Tektronix Inc., 352 F.3d 367, 379 (9th Cir. 2003) (dismissing claims of negligent misrepresentation based on "generalized, vague and unspecific assertions").  Plaintiff does not dispute this.  Pl. Mem. at 24-26.  Instead, plaintiff resorts to citing an irrelevant settlement between KFC and the FTC, a matter mentioned nowhere in the Complaint.  The FTC settlement, which involved statements that made specific comparisons between menu items at KFC and Burger King, had nothing to do with the statements challenged in the Complaint.

Plaintiff also goes on at length about why it was reasonable for him to rely on the "healthy lifestyle" statement on KFC's website, Pl. Mem. at 19-23, yet he simply misses the point:  he cannot contend that the "healthy lifestyle" statement deceived him into believing that

12

KFC food was trans-fat-free because, on the same website and in immediate proximity to that

statement, KFC provided exactly the information about trans fat content that plaintiff claims was

hidden from him.[6]   See KFC Website (KFC Ex. 10).  Both the "healthy lifestyle" statement and

the "best food" statement appeared in a continuous block of text on a single page of KFC's

website.  Immediately adjacent to that text were clearly marked links to the "Nutrition

Calculator," "KFC Nutrition Guide," and "KFC Ingredient Statement."  Clicking on any of those

links displayed the information that plaintiff claims was concealed: the Ingredient Statement

identified items containing partially hydrogenated vegetable oil, while the Nutrition Calculator

and Nutrition Guide displayed the trans fat content of menu items.[7]

III.   Plaintiff's Implied Warranty Claim Should Be Dismissed For Multiple Additional
       Reasons.

        Plaintiff's claim for breach of the implied warranty of merchantability should be

dismissed because KFC had no duty to disclose the trans fat content of its food.  See Section I.B,

---

[6]   The KFC website (KFC Ex. 10) is referred to and relied upon in the Complaint as the basis
for plaintiff's claim of negligent misrepresentation, and therefore properly may be
considered by the Court on this motion to dismiss.  See KFC Mem. at 1 n.1 (citing, inter
alia, Cephas v. MVM, Inc., 403 F. Supp. 2d 17, 20 (D.D.C. 2005); Brown v. U.S., 271 F.
Supp. 2d 225, 228  (D.D.C. 2003); Krooth & Altman v. N. Am. Life Assurance Co., 134 F.
Supp. 2d 96, 99 (D.D.C. 2001)).

[7]   Furthermore, it is entirely irrelevant that some KFC customers in the District may lack
access to the internet and therefore to KFC's website.  Pl. Mem. at 21.  No class has yet been
certified.  In order to survive this motion to dismiss, Dr. Hoyte must establish that he
personally has a basis to pursue his claims, including his claim that KFC made the alleged
misrepresentations to him both in its stores and on its website.  Compl. ¶ 28; Pl. Mem. at 18.
Nor is the supposed inconsistency between KFC's Nutrition Guide and Nutrition Calculator
regarding the trans fat content of apple pie and lemon meringue pie, Pl. Mem. at 11, of any
legal consequence.  Plaintiff nowhere alleges that he ate either apple pie or lemon meringue
pie at KFC, and the differences most likely reflect the different times the Nutrition Guide
and Nutrition Calculator were updated.  Finally, while it may be true that some consumers
visited the KFC website for purposes other than obtaining nutritional information, Pl. Mem.
at 23, Dr. Hoyte has alleged that he had a special interest in finding out whether food that he
was consuming, including KFC food, contained trans fat, Compl. ¶ 33.

supra.  However, even if KFC had such a duty, plaintiff's implied warranty claim fails for the

three additional reasons raised in KFC's opening brief, none of which plaintiff rebuts.  As an

initial matter, Dr. Hoyte does not identify the menu items or even the types of food that he

allegedly ate.  Second, the Complaint does not adequately allege that KFC failed to meet the not

particularly exacting standard of merchantability that is set by the law.  Third, and perhaps most

fatally to his claims, plaintiff does not allege that he suffered <u>any</u> legally cognizable injury for

which he is entitled to recover.

A.     <u>Plaintiff Still Refuses To Identify The Products About Which He Complains</u>.

It is elementary that to assert a claim that a product breached the implied warranty of

merchantability, a plaintiff must identify the product in question.  Yet even now, plaintiff will

not tell the Court what it was that he ate at KFC.  This omission in plaintiff's pleadings is

significant, since the amount of trans fat in the food sold at KFC varies from product to product,

and, indeed, some of the food it sells contains no trans fat at all.  <u>See</u> KFC Brochure (KFC Ex.

12); KFC Nutrition Guide (KFC Ex. 13).  Both the law of implied warranty and the fair and

adequate notice requirements imposed by Rule 8 require that, at a minimum, plaintiff identify

what it is he purchased and ate from KFC – a matter that is certainly within his exclusive

knowledge.

B.     <u>Plaintiff's Allegations Establish That Whatever Food He Ordered From KFC Met
        The Standard Of Merchantability</u>.

The standard imposed by the law of implied warranty of merchantability is not an

exacting one.  As observed in KFC's opening brief, and as plaintiff does not contest, goods do

not have to be of high quality to be merchantable.  Instead, to satisfy the legal standard for

merchantability, a product must merely be of ordinary quality and "fit for the ordinary purposes"

for which it is intended to be used.  See D.C. Code § 28:2-314(2); U.C.C. § 2-314, Comment 5 (adopted by the District of Columbia, see Act of Dec. 30, 1963, 888 Pub. L. No. 243, 77 Stat. 630) (principal warranty with regard to food and drink is that they "are fit for the ordinary purpose for which such goods are used"); see also Brennan v. Shepherd Park Pharmacy, 138 A.2d 494, 495 (D.C. 1958) (the law does not require that "the goods shall be of first quality or even that they shall be as good as the average of goods of the sort").  As applied to food, this standard requires only that a product be fit to be consumed.  Food is merchantable if it is palatable, contains no immediately harmful or nauseating substances, and causes no legally cognizable injury to the consumer upon being eaten.  See, e.g., Hochberg v. O'Donnell's Restaurant, Inc., 272 A.2d 846, 848-849 (D.C. 1971).  On the pleadings, the unnamed food that Dr. Hoyte purchased from KFC met all of these very basic criteria, and accordingly plaintiff has not adequately alleged that the food he ate was non-merchantable.

Plaintiff sidesteps the issue of KFC's breach by making the conclusory assertion that "all of KFC's foods that contain trans fats violate the implied warranty of merchantability . . . ."  Pl. Mem. at 29.  The untenability of this extreme position is underscored by the Complaint and the materials relied on therein, which demonstrate that trans fat is present in a wide variety of foods. See Complaint ¶ 19 (trans fat found naturally in meat and dairy products); 2005 Dietary Guidelines, Ch. 6 (KFC Ex. 1) (referred to at Complaint ¶ 19); IOM Report (KFC Ex. 6) (referred to at Complaint ¶ 20); 2004 CSPI Press Release (KFC Ex.9) (source of quotation at Complaint ¶ 21).  Moreover, far from alleging that the food plaintiff purchased from KFC was unfit to be eaten, Dr. Hoyte dined at KFC on several occasions.  Complaint ¶ 30.  Whatever the potential long term health effects of eating trans fat may be, plaintiff has not alleged that they

render food non-merchantable within the standard imposed by the law.  See U.C.C. § 2-314,

Comment 5 (goods must only be "fit for the ordinary purpose for which such goods are used").

        Where, as here, the food in question is undeniably fit to be eaten, the D.C. courts have not

applied the "reasonable expectation" test to hold otherwise.  The cases applying the reasonable

expectation test upon which plaintiff relies do not involve ingredients or nutrients commonly

present in food, such as partially hydrogenated oil or trans fat.  Rather those cases involve

contaminants or other objects that are not usually found in the food as served and that directly or

indirectly caused personal injury to the plaintiff.  See, e.g., Sowell v. Hyatt Corp., 623 A.2d

1221, 1225 (D.C. 1993) (plaintiff reacted to finding a worm in the dish she was eating by

vomiting repeatedly and suffering an esophageal tear that required examination under anesthetic

as a result); Hochberg, 272 A.2d at 847-49 (plaintiff chipped his tooth and required dental work

after he bit down on an olive pit in what was served as a pitted olive).  Much as in the area of

duty, the authorities cited by plaintiff do not reveal a single circumstance in which a plaintiff was

permitted to proceed with a breach of implied warranty claim under the reasonable expectation

test based solely on the allegation the product contained a common, but allegedly undisclosed,

ingredient or nutrient that had caused him no actual injury.  Indeed, plaintiff's own explanation

of the reasonable expectation test seems to accept that the standard is intended to apply only to

foods contaminated by foreign objects.  See Pl. Mem. at 26 ("[T]he reasonable expectation test

questions whether the object 'should reasonably be expected by the consumer to be in the food

served him.'") (emphasis added).  By no stretch of the imagination can trans fat – which is

naturally present in many foods and commonly present in a substantial array of packaged and

restaurant foods sold in this country – be considered a type of foreign object or contaminant that renders food non-merchantable.[8]

        C.      <u>In His Claim For Breach Of Implied Warranty, Plaintiff Fails To Allege That He Sustained Any Legally Cognizable Injury</u>.

As KFC noted in its opening brief, a claim for breach of implied warranty must be supported by an allegation that the purported breach caused some sort of damage to the plaintiff. Plaintiff does not challenge this principle, yet Dr. Hoyte does not allege in the Complaint that he experienced <u>any</u> legally cognizable harm – be it personal injury or economic loss – as a result of eating the unidentified food he purchased from KFC.

Unlike the plaintiffs in <u>Hochberg</u> and <u>Sowell</u>, Dr. Hoyte expressly disclaims any personal injury as a result of eating KFC food.  So far as it appears from the Complaint, the plaintiff found the food palatable and nutritious as he ate it, and experienced no nausea or ill effects thereafter. Plaintiff apparently found his KFC meals sufficiently satisfying that he returned to dine there on multiple occasions.  Complaint ¶ 30.

While he claims that he suffered some undisclosed economic loss as a result of his purchases (Complaint ¶ 41; Prayer for Relief ¶¶ 1, 3), plaintiff alleges no facts to support this conclusory allegation.  To the contrary, Dr. Hoyte went into a restaurant that is part of a national chain and bought food that was sold under a well-known brand name at a standard, non-negotiable price.  The pleadings allege no facts that indicate how, as a result of these

---

[8]    The fact that the plaintiff is able to name two chains that purportedly have decided to stop using partially hydrogenated oil in their restaurants, Pl. Mem. at 9, does not catapult trans fat into the category of contaminants that make food non-merchantable.  The food sold by at least one of the two restaurants that plaintiff cites approvingly, Chick-fil-A, still contains trans fat.  Pl. Mem. at 30.  Meanwhile, Wendy's only "recently announced that it was switching" to frying food in a different oil, which strongly implies that when Dr. Hoyte bought food from KFC in 2004 and 2005, Wendy's also prepared its food with partially hydrogenated oil.  Pl. Mem. at 9.

unremarkable events, plaintiff incurred any economic loss.  Plaintiff does not allege that KFC

would have charged him less if it had used different cooking oils, and the Complaint strongly

implies that the food he bought from KFC would have cost <u>more</u> if it had been prepared in the

manner that the plaintiff advocates.  <u>See</u> Complaint ¶ 25 (liquid oil is more costly than partially

hydrogenated oil and converting the restaurant's equipment to use liquid oil would require a

capital investment).  While in some cases a consumer may recover for economic losses incurred

as a result of a breach of implied warranty, plaintiff here has not alleged a sufficient factual basis

for a claim for economic damages.

Plaintiff also engages in an extended but misguided analysis of D.C. case law, seeking to

show that a consumer may recover for negligent infliction of emotional distress even absent any

physical injury.  This may well be the case, but it is wholly irrelevant to plaintiff's own claims,

since Dr. Hoyte does not allege but rather specifically disclaims that he experienced any

emotional injury as a result of eating at KFC.  <u>See</u> Complaint ¶¶ 41, 47.  Moreover, it is scarcely

conceivable that plaintiff could sustain any such claim under D.C. law, which requires emotional

distress to be both "serious" and "verifiable."  <u>Williams v. Baker</u>, 572 A.2d 1062, 1068 (D.C.

1990) ("in furtherance of the policy of excluding recovery for trifling distress, the claimed

distress must be 'serious' and 'verifiable'"); <u>Sowell</u>, 623 A.2d at 1225; <u>Jones v. Howard Univ.,

Inc.</u>, 589 A.2d 419, 424 (D.C. 1991).  It is difficult to imagine that the recollection of having

eaten a slice of apple pie or a piece of fried chicken at KFC has caused Dr. Hoyte serious and

verifiable emotional distress, and plaintiff has alleged nothing to support such a conclusion.

IV.     Plaintiff's DCCPPA Claim Should Be Dismissed For Three Additional Reasons.

   A.     Plaintiff Has Not Alleged Any Injury-In-Fact And Therefore Lacks Standing.

   As shown in KFC's opening brief, absent sufficient allegations of injury-in-fact, a

plaintiff has no standing to pursue a claim under the DCCPPA.  See, e.g., Williams v. Purdue

Pharma Co., 297 F. Supp. 2d 171, 177 (D.D.C. 2003) (dismissing complaint for failure to plead

injury-in-fact); Hakki v. Zima Co., No. 03-9183, 2006 WL 852126 at *2 (D.C. Super. Ct. 2006)

(dismissing complaint for plaintiff's failure to "plead an injury in fact to a legally protected

interest that is particular to him"); KFC Mem. at 29-31.  Here, plaintiff fails to meet the injury-

in-fact requirement: he expressly disclaims any injury other than economic harm, then fails to

provide any factual basis for his conclusory allegation of economic damages.

   The plain language of the Complaint limits plaintiff's alleged injury to economic

damages: "Dr. Hoyte and the Class seek actual damages for their economic injuries caused by

[KFC's] violations in an amount to be determined at trial. . . .  Neither Dr. Hoyte nor any class

member seeks any monetary recovery for any personal injury, emotional harm, pain and

suffering, or any other form of non-economic damage."  Compl. ¶ 47.  Yet, having disclaimed all

non-economic harm, plaintiff fails to say what the economic harm was or provide any factual

basis for that allegation.  As noted above, as far as the Complaint indicates, plaintiff bought

standard items at standard, set prices from a national restaurant chain, and found his purchases

sufficiently satisfying that he returned several times to the same restaurants.  Plaintiff also does

not allege that the food he purchased would have cost less if KFC had not used trans fat.

   Nor would it suffice for plaintiff to claim that he would not have bought the food if he

had known of its trans fat content, because he has not alleged that he experienced any adverse

consequences as a result of consuming the food.  Virtually the same allegation was rejected as a

basis for injury-in-fact in Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003)

and <u>Rivera v. Wyeth-Ayerst Laboratories</u>, 283 F.3d 315 (5th Cir. 2002).  In <u>Williams</u>, the plaintiffs purchased and used OxyContin and claimed economic damages under the DCCPPA on the ground that the defendants would have charged a lower price for the drug had it been known that it failed to provide effective pain relief, but did not allege that it failed to provide <u>them</u> with effective pain relief or that they actually suffered any adverse consequences.  The court held that "[w]ithout alleging that a product has failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs."  297 F. Supp. 2d at 176.  Likewise, in <u>Rivera</u>, which plaintiff makes no attempt to distinguish, a nearly identical claim of economic injury was held insufficient to establish injury-in-fact:

> Rivera's claim to injury runs something like this: [defendant] Wyeth sold [a drug named] Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back. . . .  The plaintiffs never define this 'economic injury' . . . .  Merely asking for money does not establish an injury in fact. . . .  It is not enough that Wyeth may have violated a legal duty owed to some other patients; the plaintiffs must show that Wyeth violated a legal duty owed to them.

283 F.3d at 319-20.  Dr. Hoyte's allegations of economic harm parallel those of the plaintiffs in <u>Williams</u> and <u>Rivera</u>, and similarly fail to plead any injury-in-fact.

Nor do either of plaintiff's other injury allegations provide a sufficient factual basis for standing to pursue a claim under the DCCPPA:

- Paragraph 3, in the section of the Complaint labeled "Jurisdiction and Venue," alleges merely that Dr. Hoyte and other D.C. consumers purchased KFC food containing trans fat in the District of Columbia "and were thereby injured and subjected to irreparable harm in this venue."  By its own terms, this allegation pertains to the <u>venue</u> of the injury, not the nature of the injury.  Moreover, if this sort of generalized, conclusory allegation is sufficient to demonstrate injury-in-fact, the injury-in-fact requirement would be rendered meaningless and <u>any</u> would-be plaintiff would have standing to bring a claim under the DCCPPA.

- Paragraph 62 of the Complaint alleges that "Dr. Hoyte and D.C. Consumers were exposed to unknown amounts of unhealthy trans fats and have suffered or will suffer adverse health effects from said consumption." However, this paragraph is not even part of plaintiff's DCCPPA claim: it appears under the heading "Count III – Negligent Misrepresentation" and is not incorporated by reference into the DCCPPA claim (which, including all paragraphs incorporated by reference, comprises only paragraphs 1 through 52 of the Complaint). This paragraph not only contradicts the express disclaimer of non-economic harm in paragraph 47, it also is both conclusory and hypothetical: it does not identify the purported "health effects," nor does it allege that Dr. Hoyte himself actually has experienced any effects whatsoever (instead, Dr. Hoyte resorts to a disjunctive phrasing designed to sidestep any allegation of injury specific to him). "Hypothetical injuries cannot confer standing where an actual injury is not alleged in the complaint." <u>Hakki</u>, 2006 WL at *2.

Plaintiff's real grievance, as the Complaint makes clear, is that he was not given information about the trans fat content of KFC food at the time and place and in the manner of his liking. However, as <u>Williams</u> held, deprivation of information is not a legally cognizable injury and therefore is not sufficient to establish standing under the DCCPPA. 297 F. Supp. 2d at 178 (no standing based on the "invasion of a purely legal right" to "freedom from alleged false and misleading advertising").

B. <u>Plaintiff Offers No Plausible Theory Of How KFC's Alleged Non-Disclosure "Tend[ed] To Mislead" Him Into Believing That KFC Food Was Trans Fat Free</u>.

In order to fit his claim within the scope of the DCCPPA, plaintiff must show that KFC's alleged silence regarding trans fat content "tend[ed] to mislead" him into believing that KFC food was free of trans fat. D.C. Code § 28-3904(f). However, plaintiff has not explained why that conclusion would be reasonable or even plausible when both federal and D.C. law affirmatively exempted restaurants from disclosure of nutritional information such as trans fat content. <u>See</u> 21 U.S.C. § 343(q)(5)(A)(i); D.C. Mun. Regs. title 25, §§ 1102, 9901. Plaintiff also does not dispute that restaurants generally did not notify their customers of the trans fat content of their food in 2004 and 2005, when plaintiff allegedly made his purchases, and plaintiff does

21

not contend that KFC made any affirmative statements that its food was trans fat free.  Under

these circumstances, a consumer such as plaintiff, purchasing fast food at KFC, could not

reasonably assume that the absence of any statement by KFC concerning trans fat content meant

that the food was trans-fat-free.  Similarly, if a restaurant says nothing about the salt content of

its food, a consumer cannot reasonably assume that the food is salt-free.  To put it starkly: when

restaurants generally do not reveal whether their food contains trans fat, the silence of a

particular restaurant as to trans fat content is not the equivalent of an explicit assurance by that

restaurant to its customers that its food is free of trans fat, and therefore it cannot be said that

such silence "tends to mislead" those customers.

C.      Plaintiff's Claims For Prospective Injunctive Relief Are Subject To Express And
Implied Preemption By Federal Laws That Plaintiff Does Not Even Address.

Plaintiff seeks to require KFC, by means of prospective injunctive relief, to provide pre-

purchase, point-of-sale warnings to all consumers informing them of the use of oils containing

trans fats in the preparation of KFC food.  Complaint ¶ 51, Prayer for Relief ¶ 7.  Plaintiff

nowhere denies in his opposition brief that such relief would in effect require KFC to make

mandatory nutrient content claims as defined in the FDA food labeling regulations.  21 C.F.R. §

101.13(b)(1).  That being so, plaintiff's request for prospective injunctive relief is preempted

both under the relevant express preemption provision of the NLEA, 21 U.S.C. § 343-1(a)(5), and

under principles of implied conflict preemption.

In his brief, plaintiff devotes most of his attention to the wrong provisions of the NLEA.

As KFC noted in its opening brief, and as Pelman recognized, 237 F. Supp. 2d at 526, neither

Section 343(q) nor its corresponding express preemption provision, Section 343-1(a)(4),

preempts tort claims under state law seeking to require restaurants to disclose ingredients or

nutrients.  Section 343(q) does not even apply to restaurant food, and consequently restaurant

22

food is excluded from the operation of the corresponding preemption provision, Section 343-1(a)(4). The court in Pelman concluded that those provisions of the NLEA did not preempt the plaintiffs' efforts to require nutrition labeling of food sold at McDonald's restaurants, 237 F. Supp. 2d at 526, and, for purposes of this motion, KFC does not dispute Pelman's interpretation of Sections 343(q) and 343-1(a)(4).

But KFC's preemption argument as to plaintiff's claims for prospective injunctive relief is based on two different provisions of the NLEA, Sections 343(r) and 343-1(a)(5), which were not addressed in Pelman and are barely mentioned in plaintiff's brief. Section 343(r), unlike Section 343(q), contains only a partial exemption for restaurant food, which remains subject to certain requirements of Section 343(r) relating to nutrient content claims. Those requirements, in turn, are implemented by the FDA regulations in 21 C.F.R. §§ 101.10, 101.9 and 101.45, which expressly provide that when a nutrient content claim is made, the restaurant shall make available to the customer upon request nutritional labeling of the type otherwise required only for packaged food and in a form that may include in-store brochures and may be supplemented with website information.

Plaintiff evidently recognizes that Section 343(r) does not fully exempt restaurant food, as he argues merely that "some" of the requirements of Section 343(r) do not apply to restaurants. Pl. Mem. at 39. Of course, what matters for purposes of preemption is that some of the requirements of Section 343(r) do apply to restaurants and that plaintiff's requested relief would implicate those requirements. The express preemption provision that corresponds to Section 343(r) is Section 343-1(a)(5), which prohibits a state from imposing nutritional content labeling requirements that are "not identical" to the requirements of Section 343(r), as implemented by the FDA regulations. The injunctive relief sought by plaintiff – mandatory pre-

purchase communication of trans fat content to all KFC customers regardless of whether they request it or not – is "not identical" to federal nutritional labeling requirements (and plaintiff, in his opposition brief, does not contend otherwise).  Accordingly, plaintiff's request for injunctive relief is expressly preempted by Sections 343(r) and 343-1(a)(5) of the NLEA, 21 U.S.C. §§ 343(r), 343-1(a)(5).

Plaintiff does not even address the doctrine of implied conflict preemption, an additional, independent basis for concluding that federal law preempts plaintiff's claims for injunctive relief. As set forth in KFC's opening brief, the Supreme Court has held that where federal law provides a product supplier with a range of choices, a tort claim that seeks to restrict that range of choices is preempted.  <u>Geier v. American Honda Motor Co.</u>, 529 U.S. 861, 875, 881 (2000).  Federal law here provides KFC with an array of options for how to communicate nutrient content claims to its customers if it chooses to make such claims, and plaintiff's attempt to limit those options is therefore preempted.

<u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety, with

prejudice.

Dated: New York, New York    Respectfully submitted,
   September 26, 2006

           DEBEVOISE & PLIMPTON LLP

           /s/ Roger E. Podesta_____
           By: Roger E. Podesta
             Mark P. Goodman
             Erich O. Grosz
             (admitted <u>pro</u> <u>hac</u> <u>vice</u>)

           919 Third Avenue
           New York, N.Y. 10022
           Tel: (212) 909-6000
           Fax: (212) 909-6836

           /s/ Ada Fernandez Johnson_____
           By: Ada Fernandez Johnson
             (Bar No. 463296)

           555 12th St., N.W.
           Suite 1100E
           Washington, D.C. 20004
           Tel: (202) 383-8000
           Fax: (202) 383-8118

           Attorneys for Defendant Yum! Brands, Inc.