UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR HOYTE, M.D.,                  :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :  Civil Action No. 06-1127 (JR)
                                     :
YUM! BRANDS, INC. d/b/a KFC          :
                                     :
        Defendant.                   :

**MEMORANDUM**

Defendant Yum! Brands, Inc. (parent company of KFC) moves to dismiss the complaint of Arthur Hoyte, M.D., [12], which alleges that KFC failed to disclose the presence of trans fat in its food and made misleading statements to the public concerning the content of its food. For the reasons set forth below, that motion will be **granted**.

**Background**[1]

Trans fat is a "major cause of heart disease [that] should be phased out of the food supply as rapidly as possible,"[2] since "the only safe level of trans fat in the diet is zero."[3] [1] ¶ 21, 20. Dr. Hoyte alleges that "[a]ll KFC locations in the District of Columbia, both company-owned and franchised, use

---

[1]On a motion to dismiss, the allegations of the complaint are taken to be true.

[2]Quoting Dr. Walter Willett, professor of nutrition and epidemiology at the Harvard School of Public Health.

[3]Citing the National Academy of Health's Institute of Medicine.

partially hydrogenated oil, which is very high in trans fat." [1] ¶¶ 18, 19 (noting that 80% of the trans fat in the American diet comes from partially hydrogenated oil), 22 (listing certain items from KFC's menu and their corresponding trans fat content). KFC's use of partially hydrogenated oil is "unnecessary," because healthier oils are available. [1] ¶¶ 23, 24, 25. KFC advertises on its website and in its restaurants that it sells the "best food," and that KFC products are part of a nutritionally healthy lifestyle. [1] ¶ 28. The advertisements do not reveal the use of trans fats.

In 2004 and 2005, aware that the FDA had cautioned against the consumption of trans fat, plaintiff was trying to avoid products containing such fat. [1] ¶ 33. When he purchased food at the KFC in Northeast Washington, D.C., he was unaware that some of it was prepared with trans fat. KFC did not display any warning or disclaimer informing customers of the presence of trans fat in its food. [1] ¶¶ 31, 32.

These are the essential allegations of plaintiff's suit, filed June 13, 2006 in the Superior Court of the District of Columbia, claiming violations of the D.C. Code §§ 28:2-314 and the common law implied warranty of merchantability (Count I), violations of the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904 and 28-3905(K)(1) (Count II), and negligent misrepresentation (Count III). Plaintiff seeks economic damages,

disgorgement of monies derived from unlawful trade practices, injunctive relief,[4] attorneys' fees and costs.  Defendant removed the case to this court on June 21, 2006.

### Standard of Review

In its motion to dismiss, defendant Yum!/KFC (hereinafter, "KFC") invokes Rules 12(b)(6) and 9(b)[5] of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  A court should not dismiss for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004).  In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations, including mixed questions of law

---

[4]While irrelevant to my consideration of defendant's motion to dismiss, it is worth noting that KFC has already done some of what plaintiff demands.  On October 30, 2006, KFC announced plans to begin using zero trans fat cooking oil for some of its menu items.  See Andrew Martin, *The Colonel is Phasing Out Trans Fat from the Menu*, N.Y. Times, Oct. 31, 2006, at C1.  Shortly after the announcement, the Center for Science in the Public Interest withdrew from this lawsuit.  See [19] (notifying the court of CSPI's withdrawal).

[5]Fed. R. Civ. P. 9(b) is specifically concerned with actions for fraud or mistake and applies, if at all, only to the negligent misrepresentation count.  It requires that "the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

and fact, as true, drawing all reasonable inferences in the plaintiff's favor. Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), cert. denied, 540 U.S. 1149 (2004). However, the court may reject "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," or "legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## Analysis

Count I: The implied warranty of merchantability

Dr. Hoyte's first claim is that KFC committed a breach of both the statutory and common law implied warranty of merchantability. [1] ¶¶ 35-41. As defendant rightly notes, it is the court's responsibility to determine what duties, if any, defendant owes plaintiff in the circumstances presented. [12] at 10, citing Settles v. Redstone Dev. Corp., 797 A.2d 692, 695 (D.C. 2002).

It has been true since as early as 1886 that "goods sold by a manufacturer, in the absence of an express contract, are impliedly warranted as merchantable, or as suited to the known purpose of the buyer." De Witt v. Berry, 134 U.S. 306, 313 (1890), citing Dushane v. Benedict, 120 U.S. 630, 636 (1886). The D.C. Code codifies this long-standing doctrine in § 28:2-101 *et. seq.*, which recognizes an "implied warranty that food sold

and consumed on a premises or elsewhere is 'fit for the ordinary purposes for which such goods are used.'" Hochberg v. O'Donnell's Restaurant, Inc., 272 A.2d 846 (D.C. 1971), quoting D.C. Code § 28:2-314.  Even before the implied warranty of merchantability was incorporated into the D.C. Code, the implied warranty of merchantability applied to the sale of food in the District, requiring packaged and restaurant food to be "wholesome and fit for human consumption, and contain[] no foreign or deleterious substance."  Id., citing Cushing v. Rodman, 82 F.2d 864 (D.C. Cir. 1936); Benjamin v. Hot Shoppes, Inc., D.C. Mun. App., 185 A.2d 512 (1962); Lohse v. Coffey, D.C. Mun. App., 32 A.2d 258 (1943).

Plaintiff acknowledges that in order to state a claim of breach of the implied warranty of merchantability, the plaintiff must demonstrate that the offensive "object" or "substance" in the purchased food is not one that a "consumer would reasonably expect to find . . . in the particular type of dish or style of food served."  Hochburg, 272 A2d. at 849, quoting Betehia v. Cape Cod Corp., 10 Wis.2d 323, 328 (1960); [14] at 27.  This determination of reasonableness, plaintiff maintains, is a question of fact that should be answered by a jury.  While it might be appropriate for this court to find, as a matter of law, that the consumption of fat – including trans fat – is indeed within the reasonable expectations of the

consumers of fried chicken and French fries prepared in fast food kitchens, it is not necessary for me to reach that question.  A more fundamental problem is fatal to Count I – the absence of any allegation of injury.

Dr. Hoyte does not "allege that the food he ordered was in any way unpalatable or that he suffered any immediate ill effects after he ate his order."  [12] at 27.  He claims no emotional harm, pain or suffering.  He does mention "economic injuries," [1] ¶ 47, but he does not specify what "economic injury" he has suffered, and none is evident from the facts presented, even under the most charitable reading of the complaint.

Responding to KFC's assertion that he lacks the injury necessary to state a claim under an implied warranty of merchantability, plaintiff states that he "was placed in a zone of 'physical endangerment'" when KFC sold him food products containing trans fats, but defendant correctly replies that this argument is based on a misunderstanding of the law.  [14] at 32; [16] at 18.  The "zone of physical danger" concept applies only to claims of "serious" and "verifiable" emotional distress, which plaintiff expressly disavows.  <u>Williams v. Baker</u>, 572 A.2d 1062, 1068 (D.C. 1990).

Count II: Breach of D.C. Consumer Protection Act

Plaintiff next alleges that KFC violated the D.C. Consumer Protection Procedures Act, § 28-3904 and § 28-3905(k)(1) (DCCPPA), by "[f]ailing to state the material fact of the type of oils they were using for preparing food products, with the intent or effect of deceiving or misleading D.C. Consumers," and by "[s]elling consumer goods in a condition or manner not consistent with the implied warranty of merchantability provided in D.C. Code §§ 28:2-312-318."

Among the list of prohibited trade practices in the DCCPPA is the failure "to state a material fact if such failure tends to mislead," and the sale of "consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law." D.C. Code § 28-3904(f), § 28-3904(x). A claim under the DCCPPA may be brought by any person, "whether acting for the interests of itself, its members, or the general public." D.C. Code § 28-3905(k). While the preceding language and the statute's introduction – "[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived, or damaged thereby," D.C. Code § 28-3904 – might suggest that a plaintiff could pursue a claim under DCCPPA without an actual or threatened injury, the cases hold otherwise. Williams v. Purdue

Pharma Co., 297 F. Supp. 2d 171, 178 (D.D.C. 2003) ("the CPPA [does] not change the requirements for standing under D.C. law, despite its broad language,") citing Friends of Tilden Park, Inc. v. District of Columbia, 806 A.2d 1201, 1206 (D.C. 2002) (the D.C. courts, though not established under Article III of the Constitution, nevertheless recognize constitutional and prudential standing requirements).  Since plaintiff must present an actual or threatened injury-in-fact to have standing to raise his DCCPPA claims, the analysis of Count II will resemble that of Count I.

Plaintiff insists that the type of oils used in preparing food products is a "material fact," and that KFC violated the DCCPPA by failing to disclose this fact "with the intent or effect of deceiving or misleading D.C. Consumers." [1] ¶ 46.  The suggestion is that, by its silence, KFC misled plaintiffs into believing that its products did not contain harmful trans fat.  This is a questionable premise at best,[6] but again, one that need not be tested in this suit.  Absent a claim of injury, Dr. Hoyte has no standing to present his DCCPPA claim.

Dr. Hoyte's lack of standing makes it unnecessary to reach the arguments KFC has presented about the settled

---

[6]Especially since, as plaintiff submits, consumers have a "growing awareness of trans fat and the need to avoid it." [1] ¶ 29.  If consumers are increasingly aware of trans fat, where do they expect to find it if not in fast food restaurants?

expectations of restaurateurs.  See Nutrition Labeling and Education Act of 1990 (NLEA), 21 U.S.C. § 343(q)(5)(A)(I) (exempting restaurants from food labeling requirements); D.C. Mun. Regs., 25 §§ 1102, 9901 (2006) (incorporating NLEA's labeling requirements, including restaurant exemption); 21 C.F.R. § 101.10 (2006) (new regulation, effective Jan. 1, 2006, requiring restaurants to provide trans fat content of menu items only if (1) restaurant makes specific health claims about that specific item in its labeling and (2) a customer requests nutrition information regarding such a menu item).  See also, Menu Education and Labeling Act of 2005, B16-495, D.C. Council (2005) (legislation considered and rejected by the D.C. Council which would have imposed upon KFC the duty plaintiff herein asserts); Nutritional Information at Restaurants Act of 2003, B15-387, D.C. Council (2003) (same).

Count III: Negligent misrepresentation

Plaintiff finally alleges that defendant breached its duty of care to Dr. Hoyte and D.C. consumers by negligently making material misrepresentations about the quality of KFC food. [1] ¶¶ 53-63.  The complaint includes two specific allegations of negligent misrepresentation: (1) a statement that KFC served the "best food" and (2) a statement described by plaintiff in which KFC allegedly informed consumers that KFC food could be consumed as a part of healthy lifestyle.  [1] ¶ 57, 28.  Plaintiff claims

that these statements were made in KFC stores and on the KFC website, though the statements are only described rather than quoted in plaintiff's complaint. [1] ¶ 28. Plaintiff asserts that, since KFC knew when these statements were made that several of its food products were prepared with trans fat, it made the statements "at the expense of the public's health and safety . . . with evil motive, intent to injure, ill will," etc. [1] ¶ 60. As a direct and proximate result of these statements, plaintiff maintains, Hoyte and others were exposed to unhealthy trans fats and "have suffered or will suffer adverse health effects" therefrom.[7]  [1] ¶ 62.

The parties disagree about whether the more stringent pleading rule of Fed. R. Civ. P. 9(b) applies to plaintiff's charge of negligent misrepresentation, compare [12] at 18-19; [16] 7-10 with [14] at 15-16, but in this case it doesn't matter.

KFC's claims that its restaurants serve the "best food" is a non-measurable, "bald statement of superiority" that is non-actionable puffery. See, e.g., Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 391 (8th Cir. 2004). Plaintiff has no response to defendant's string citation of cases holding that a merchant's boasts about his product being "the best" or of

---

[7]Note that these generally stated, hypothetical injuries were not incorporated into Counts I and II of the Complaint.

the "highest quality" is not actionable, see [12] at 21-22.  The context of such a statement irrelevant.

The statement that KFC food could be part of a healthy lifestyle is also non-actionable, for a simple reason: the statement, as characterized by plaintiff himself, does not necessarily suggest that trans fats are healthy.  There is nothing in the statement referring specifically to the KFC items prepared with trans fats, and nothing suggesting how frequently one should eat KFC in order to incorporate it into a healthy lifestyle.  No conceivable reading of this language could trigger liability for negligent misrepresentation.

An appropriate order accompanies this memorandum.


                                        JAMES ROBERTSON
                                   United States District Judge